**Exhibit A**

**Exhibit A-1**

E-filed in the Office of the Clerk
for the Business Court of Texas
10/4/2024 4:41 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11B-0010

CAUSE Nº 24-BC11B-0010

| | |
|---|---|
| SIEMENS ENERGY, INC<br>*Plaintiff*<br><br>vs.<br><br>PDV HOLDING, INC.<br>*Defendant* | IN THE BUSINESS COURT<br>DIVISION<br><br>OF THE ELEVENTH DISTRICT<br>SITTING<br><br>IN HARRIS COUNTY, TEXAS |

## ORIGINAL PETITION

Plaintiff Siemens Energy, Inc. (**SEI**) submits this Original Petition against Defendant PDV

Holding, Inc. (**PDVH**) and respectfully shows as follows:

### I. INTRODUCTION

1.      This dispute arises out a business transaction under which SEI was entitled

to receive more than $166 million from PDVH's alter ego Petróleos de Venezuela, S.A.

(**PDVSA**).  SEI obtained a judgment against PDVSA from the Southern District of New

York and now seeks to hold PDVH liable as PDVSA's alter ego for the full amount of the

judgment, which now exceeds $200 million.

### II. DISCOVERY CONTROL PLAN

2.      Plaintiff intends to conduct discovery under Level 3 of the Texas Rules of

Civil Procedure.  *See* Tex. R. Civ. P. 190.4.

Copy from re:SearchTX

### III. Statement of Monetary Relief Sought

3.      In accordance with Tex. R. Civ. P. 47(c), Plaintiff states it seeks monetary relief in an amount over $200,000,000.

### IV. Parties and Jurisdiction

4.      Plaintiff SEI is a Delaware corporation with its principal place of business in Orlando, Florida.

5.      Defendant PDVH is a Delaware corporation with its principal place of business in Houston, Texas.  Defendant may be served via its registered agent, Registered Agent Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

6.      This Court has jurisdiction under Tex. Gov't Code § 25A.004(d) because this is an "action arising out of a qualified transaction" as defined in § 25A.001(14) and the amount in dispute exceeds $10 million excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs.  This Court also has jurisdiction under Tex. Gov't Code § 25A.004(b)(2) and § 25A.004(b)(6) because veil-piercing and alter ego liability concern the "governance … of an organization" and "seek[] to hold an owner … liable for an obligation of the organization" (or vice versa).

7.      This Court has personal jurisdiction over PDVH because its principal place of business is Houston, Texas and PDVH has had sufficient contacts with Texas to subject it to the personal jurisdiction of this Court.

Copy from re:SearchTX

## V. Venue

8.      Venue is proper in Harris County pursuant to Tex. Civ. Prac. & Rem. Code §15.002 because PDVH's principal place of business is in Houston, Texas.

## VI. Facts [1]

9.      This dispute arises out of a business transaction under which Plaintiff's predecessor Dresser-Rand Company (**D-R**)[2] was entitled to receive more than $166 million from PDVH's alter ego PDVSA pursuant to a promissory note.

10.      In 2021, after PDVSA breached its obligations, D-R obtained a judgment against PDVSA in the United States District Court for the Southern District of New York in an amount over $166 million (**Judgment**).[3] Since that time, PDVSA has made no effort to satisfy the Judgment. To the contrary, PDVSA has continuously and in bad faith opposed and frustrated all collection efforts. The amount owed by PDVSA to SEI is now more than $200 million, with interest continuing to accrue.

11.      SEI has obtained a writ of attachment in the case *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, 1:17-mc-00151-LPS, in the United States District Court for the District of Delaware (**Crystallex Proceeding**). This writ of attachment relates to PDVSA's shares in PDVH (**PDVH Shares**), which are subject to an ongoing Sale Process in Delaware. Due to the uncertainty surrounding the Sale Process, and the filing by

---

[1] Factual allegations are made on information and belief unless otherwise noted.
[2] More specifically, D-R was merged into SEI, which continues to exist as the surviving entity.
[3] *See* Judgment attached as **Exhibit 1**.

Copy from re:SearchTX

certain creditors of veil piercing actions against PDVH,[4] SEI has filed this action to protect its interests and pursue remedies against PDVH.

12.     PDVSA owns 100% of the shares of PDVH, has exerted complete control and dominance over PDVH, and has used PDVH not as a separate entity, but as a tool and means to siphon funds to avoid paying its debts.  PDVH in turn owns 100% of the shares of Citgo Holding, Inc. (**Citgo**), which owns Citgo Petroleum Corporation.

13.     A few examples will illustrate how PDVSA and PDVH have operated as alter egos to perpetrate a massive fraud against PDVSA's creditors.

14.     In 2015, as Venezuela and PDVSA were dodging creditors, PDVSA used PDVH as part of a scheme in which "PDVH" (*i.e.,* PDVSA) forced Citgo to issue $2.8 billion in debt and then siphoned the proceeds through PDVH to PDVSA in a manner intended to make such funds unavailable to creditors in the United States. On information and belief, this "transaction"—which had no legitimate purpose—was orchestrated by PDVSA employees.  As part of this unlawful scheme and underscoring its fraudulent character and PDVH's lack of separateness, "PDVH" (*i.e.*, PDVSA) caused Citgo to pledge all of its assets while receiving no economic benefit.

---

[4] *See e.g. Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*, 4:24-cv-02981, in the United States District Court for the Southern District of Texas, Houston Division (removed from the District Court of Harris County, Texas, 33rd Judicial District, Cause No. 2024-47814) (**Gramercy Proceeding**). In September 2024, the Special Master in the Crystallex Proceeding sought to enjoin, *inter alia,* the prosecution of the Gramercy Proceeding in Texas.  SEI is commencing this action to preserve its rights and ensure that it shares fully and fairly in any recovery against PDVH, the alter ego of PDVSA.  This action is *not* intended to circumvent or frustrate the jurisdiction of the United States District Court for the District of Delaware.  SEI intends to comply fully with any order of the Delaware court with respect to this action once the Special Master's motion for an injunction is finally adjudicated by the Delaware court.

Copy from re:SearchTX

15. Mr. Horacio Medina, while acting as president of PDVSA's ad hoc board of directors, later admitted that the siphoning of funds—structured as a "dividend"—was "fictitious" and "non-existent." And indeed it was: the "dividend" that "PDVH" (*i.e.*, PDVSA) forced Citgo to pay was nearly **300%** of Citgo's net income—approximately 10x larger than the dividend ratio of comparable companies in the United States. This scheme was orchestrated with no consideration of PDVH's finances or the consequences to creditors and was in fact intended to defraud creditors by deliberately stripping assets and leaving undercapitalized and debt-burdened shells in the United States.

16. In 2016, with a looming debt maturity just months away, PDVSA issued more than $3 billion in new bonds to refinance bonds due in 2017. But, in order to induce the holders of the 2017 bonds to exchange into longer-dated instruments, PDVSA caused its alter ego PDVH to pledge 50.1% of its Citgo shares to secure the new bonds. PDVH received no consideration for this pledge, because PDVSA and PDVH are and have always been operated as one and the same entity.

17. In 2019, with conditions in Venezuela deteriorating, PDVSA came back for more. This time, PDVSA—in the form of its alter ego "PDVH"—forced Citgo to issue another $1.3 billion in debt, which PDVSA promptly siphoned through PDVH in a manner that was intended to defraud its creditors in the United States. Ms. Luisa Palacios, then a member of PDVH's board of directors, candidly admitted in an interview that the funds extracted by "PDVH" (*i.e.* PDVSA) from Citgo were used to pay *Venezuela's* debts. Once again, in siphoning funds outside of the country, PDVSA paid no consideration to PDVH's finances or the consequences for creditors in the United States.

Copy from re:SearchTX

18.     PDVSA and PDVH have not even pretended that they are separate entities because they are not. Over a period of decades, PDVH has operated merely as the sham by which PDVSA operates in the United States, gaining access to this country's markets and legal system while simultaneously frustrating and defrauding creditors and siphoning funds whenever needed by PDVSA. It is not surprising, then, that most or all of the members of PDVH's board have served as officers or directors of PDVSA, often concurrently. As far as SEI is aware, PDVH has no independent employees or officers.

## VI. Causes of Action

19.     Plaintiff seeks: (i) a declaratory judgment that PDVSA and PDVH are alter egos; and (ii) enforcement of its judgment against PDVH as PDVSA's alter ego.

### A. Declaratory Judgment

20.     Plaintiff realleges paragraphs 9-18 as if fully set forth herein.

21.     Plaintiff is a creditor of PDVSA pursuant to the Judgment.

22.     PDVSA and PDVH are alter egos. More specifically: (i) PDVH is a sham that has been used by PDVSA to defraud its creditors and advance PDVSA's interests while avoiding obligations; (ii) PDVSA has repeatedly used PDVH's assets as its own, effectively *becoming* "PDVH" when needed to siphon funds; (iii) PDVH's funds have been directed by PDVSA away from PDVH and to PDVSA in a manner intended to defraud PDVSA's creditors; (iv) PDVSA has ignored corporate distinctions and formalities between PDVSA and PDVH, including by exercising complete control over PDVH and directing PDVH's daily affairs for the sole benefit of PDVSA; (v) having operated in the

Copy from re:SearchTX

guise of PDVH to strip assets and defraud creditors, PDVSA has intentionally left PDVH insolvent and/or severely undercapitalized.

23.     Plaintiff seeks a judicial declaration under Tex. Civ. Prac. & Rem. Code 37.004 that PDVSA and PDVH are alter egos and that, as the alter ego of PDVSA, PDVH is liable to Plaintiffs for the full amount of the Judgment.

## B. Enforcement of Judgment

24.     Plaintiff realleges paragraphs 9-18 as if fully set forth herein.

25.     The Judgment is entitled to full faith and credit in the courts of this State.

26.     The Judgment remains unsatisfied.

27.     No defense to enforcement of the Judgment exists.

28.     Accordingly, Plaintiff is entitled to enforcement of the Judgment pursuant to Texas common law and Tex. Civ. Prac. & Rem. Code 35.008 against PDVH, as the alter ego of PDVSA, which is the recalcitrant Judgment debtor.

## C. Attorneys' Fees

29.     Plaintiff is entitled to its reasonable and necessary attorneys' fees under Tex. Civ. Prac. & Rem. Code 37.009, as such an award would be equitable and just.

## VII. PRAYER

30.     Plaintiff requests that PDVH be summoned to appear and answer and that the Court enter final judgment in favor of Plaintiff and against PDVH for: (i) a declaration that PDVH and PDVSA are alter egos; (ii) a declaration that PDVH, as PDVSA's alter ego,

Copy from re:SearchTX

is liable to Plaintiff for the Judgment; (iii) an order entering judgment against PDVH in the

amount of the Judgment, including accumulated interest; (iv) post-judgment interest on

this Court's final judgment; (v) reasonable attorneys' fees and costs of court to the extent

allowed by law; and (vi) any other legal or equitable relief to which Plaintiff is entitled.

Respectfully submitted,

REED SMITH LLP

*s/ Kenneth E. Broughton*
Kenneth Broughton
State Bar Nº 03087250
Francisco Rivero
State Bar Nº 24046725
Arturo Muñoz
State Bar Nº 24088103
1221 McKinney St, Ste 2100
Houston, Texas 77010
T: 713.469.3800
F: 713.469.3899
E: *kbroughton@reedsmith.com*
    *frivero@reedsmith.com*
    *amunoz@reedsmith.com*

ATTORNEYS FOR PLAINTIFF
SIEMENS ENERGY, INC.

8

Copy from re:SearchTX

# EXHIBIT 1

Copy from re:SearchTX

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
DRESSER-RAND COMPANY,

|  |  |
|---|---|
| Plaintiff, | 19 **CIVIL** 2689 (LLS) |
| -against- | **JUDGMENT** |

PETRÓLEOS DE VENEZUELA, S. A.,

Defendant.
--------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Judgment dated December 8, 2021, judgment is entered in favor of Dresser Rand Company ("D-R") and against Petróleos De Venezuela, S.A. ("PDVSA") in the amount of USD $166,082,240.21, plus post-judgment interest at the rate of 8.5% per annum pursuant to Section 2.04 of the Note Agreement.

**Dated:** New York, New York
December 9, 2021

**RUBY J. KRAJICK**
_____
**Clerk of Court**

**BY:**

**Deputy Clerk**

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kenneth Broughton
Bar No. 03087250
kbroughton@reedsmith.com
Envelope ID: 92827721
Filing Code Description: Petition
Filing Description: Original Peition
Status as of 10/7/2024 9:02 AM CST

Associated Case Party: Siemens Energy, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Arturo Munoz | | amunoz@reedsmith.com | 10/4/2024 4:41:51 PM | SENT |
| Francisco Rivero | | frivero@reedsmith.com | 10/4/2024 4:41:51 PM | SENT |
| Kenneth E.Broughton | | kbroughton@reedsmith.com | 10/4/2024 4:41:51 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen S.Wright | | kwright@reedsmith.com | 10/4/2024 4:41:51 PM | SENT |

Copy from re:SearchTX

**CITATION**

**THE STATE OF TEXAS, Business Court Division 11B**

**NO. 24-BC11B-0010**

**SIEMENS ENERGY, INC. VS. PDV HOLDING, INC.**

TO:     PDV Holding, Inc. by serving Registered Agent Corporation Trust Company

         1209 Orange Street

         Wilmington, DE 19801

DEFENDANT in the above styled and numbered cause:

YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday following the expiration of twenty days after you were served this citation and petition, a default judgment for the relief demanded in the petition may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org

Attached is a copy of the ORIGINAL PETITION in the above styled and numbered cause, which was filed on the 4th day of October, 2024 in the Business Court of Texas Business Court Division 11B. This instrument describes the claim against you.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office on this on this the 8th day of October, 2024.



ADDRESS OF LEAD ATTORNEY FOR PLAINTIFF:

Kenneth E. Broughton, Jr.

811 Main St., Ste.1700

Houston, TX 77002-6110

**Beverly Crumley, Business Court Clerk**

300 W. 15th Street, Suite 606

Austin, Texas 78701

(512) 463-1616

By: *Beverly Crumley*

---

**RETURN OF SERVICE**

Came to hand on the _____ day of _____, 20____, at _____o'clock __M. and executed at _____, within the County of _____, Texas, at _____o'clock ____M. on the ____ day of _____ , 20 __, by delivering to the within named _____, in person a true copy of this citation, with a true and correct copy of ORIGINAL PETITION attached thereto, having first endorsed on such copy of citation the date of delivery.

*NOT EXECUTED*, the diligence used to execute being (show manner of delivery) _____

_____; for the following reason _____

The defendant may be found at _____.

*Strike if not applicable.

**TO CERTIFY WHICH WITNESS MY HAND OFFICIALLY** _____ COUNTY, TEXAS

_____ SHERIFF/CONSTABLE    BY: _____ DEPUTY

**FEE FOR SERVICE OF CITATION: $ _____**

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return.

My name is _____, my date of birth is _____, and my address is

           Please print.     (First, Middle, Last)

_____ (Street, City, Zip).

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____ , on the _____ day of _____ , 20_____

          Declarant/Authorized Process Server          ID # & expiration of certification

Copy from re:SearchTX

# Exhibit A-2

E-filed in the Office of the Clerk
for the Business Court of Texas
11/18/2024 3:38 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11B-0010

CAUSE NO. 24-BC11B-0010

| | |
|---|---|
| SIEMENS ENERGY, INC., | |
| *Plaintiff,* | IN THE BUSINESS COURT DIVISION |
| v. | OF THE ELEVENTH DISTRICT SITTING |
| PDV HOLDING, INC., | IN HARRIS COUNTY, TEXAS |
| *Defendant.* | |

## DEFENDANT PDV HOLDING, INC.'S ORIGINAL ANSWER AND DEFENSES OR AFFIRMATIVE DEFENSES

Defendant PDV Holding, Inc. ("PDVH") files this Original Answer and Defenses or Affirmative Defenses in response to the Original Petition ("Petition") filed by Siemens Energy, Inc. ("Plaintiff"), and in support respectfully states:

### GENERAL DENIAL

1.      Pursuant to Texas Rule of Civil Procedure 92, Defendant generally denies all allegations contained within Plaintiff's Petition and demands strict proof of all allegations, as required by law.

### DEFENSES OR AFFIRMATIVE DEFENSES

Subject to and without waiving its general denial, under Texas Rule of Civil Procedure 94, Defendant PDVH asserts the following defenses or affirmative defenses:

1.      Plaintiff's claims have no basis in law or fact.

2.      Plaintiff's claims fail, in whole or in part, because Defendant's conduct did not cause, proximately cause, solely cause, or solely proximately cause the injuries or damages claimed by Plaintiff, to the extent any exist.

3.      Plaintiff's claims fail, in whole or in part, because Plaintiff has practically available

Copy from re:SearchTX

remedies outside of its extreme request to reverse-pierce, including in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del.) ("*Crystallex*").

4.     Plaintiff's claims are barred, in whole or in part, due to estoppel and waiver.

5.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

6.     Plaintiff has failed to mitigate its alleged damages, if any.

7.     Plaintiff's requested relief is barred by the United State Government's Venezuela-related sanctions regime and Plaintiff lacks permission from the United States to obtain its requested relief.

8.     Defendant reserves the right to raise additional defenses and affirmative defenses as they become apparent during the development of the case.

## PRAYER FOR RELIEF

WHEREFORE, Defendant PDVH respectfully requests that Plaintiff takes nothing by its suit; that PDVH recovers its costs, expenses, and attorneys' fees; and that PDVH receives any such further relief to which it may show itself justly entitled.

Copy from re:SearchTX

Dated: November 18, 2024

Respectfully submitted,

**EIMER STAHL LLP**

By: */s/ Nathan P. Eimer*

Nathan P. Eimer
State Bar No. 24001478
neimer@eimerstahl.com
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

*Attorney-In-Charge for Defendant
PDV Holding, Inc.*

**Of Counsel:**
Scott C. Solberg (*pro hac vice forthcoming*)
ssolberg@eimerstahl.com
Daniel D. Birk (*pro hac vice forthcoming*)
dbirk@eimerstahl.com
James W. Joseph (*pro hac vice forthcoming*)
jjoseph@eimerstahl.com
Gregory M. Schweizer (*pro hac vice
forthcoming*)
gschweizer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

David J. Beck
State Bar. No. 00000070
dbeck@beckredden.com
Kaitie Sorenson
State Bar No. 24128633
ksorenson@beckredden.com
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Fax: (713) 951-3720

Copy from re:SearchTX

## CERTIFICATE OF SERVICE

I certify that on November 18, 2024, a true and correct copy of **PDV Holding, Inc.'s Original Answer and Defenses or Affirmative Defenses** was served via e-service on all counsel of record.

/s/ Nathan P. Eimer
Nathan P. Eimer

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Erin Rogers on behalf of Nathan Eimer
Bar No. 24001478
erogers@eimerstahl.com
Envelope ID: 94422712
Filing Code Description: Answer/Response
Filing Description: Defendant PDVH's Original Answer and Defenses
Status as of 11/18/2024 5:02 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David J.Beck | | dbeck@beckredden.com | 11/18/2024 3:38:29 PM | SENT |
| Francisco Rivero | | frivero@reedsmith.com | 11/18/2024 3:38:29 PM | SENT |
| Arturo Munoz | | amunoz@reedsmith.com | 11/18/2024 3:38:29 PM | SENT |
| Karen S.Wright | | kwright@reedsmith.com | 11/18/2024 3:38:29 PM | SENT |
| Kenneth E.Broughton | | kbroughton@reedsmith.com | 11/18/2024 3:38:29 PM | SENT |
| Division 11B | | BCDivision11B@txcourts.gov | 11/18/2024 3:38:29 PM | SENT |
| Kaitie Sorenson | | ksorenson@beckredden.com | 11/18/2024 3:38:29 PM | SENT |
| Nathan  PEimer | | neimer@eimerstahl.com | 11/18/2024 3:38:29 PM | SENT |
| Erin MRogers | | erogers@eimerstahl.com | 11/18/2024 3:38:29 PM | SENT |

Copy from re:SearchTX

# Exhibit A-3

E-filed in the Office of the Clerk
for the Business Court of Texas
12/9/2024 6:49 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11B-0010

CAUSE NO. 24-BC11B-0010

| | |
|---|---|
| SIEMENS ENERGY, INC., | |
| *Plaintiff,* | IN THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION SITTING IN |
| PDV HOLDING, INC., | HARRIS COUNTY, TEXAS |
| *Defendant.* | |

**DEFENDANT PDV HOLDING, INC.'S MOTION TO DISMISS
PURSUANT TO TEXAS RULE OF CIVIL PROCEDURE 91a**

Copy from re:SearchTX

# TABLE OF CONTENTS

Introduction...................................................................................................................... 7

Summary of Argument................................................................................................... 7

Background ...................................................................................................................... 9

Standard of Review and Applicable Law.................................................................... 11

Argument and Authorities ........................................................................................... 13

    I.      Siemens Has Not Alleged "Fraud or Similar Injustice" Under Delaware Law
            to Justify Piercing PDVH's Corporate Veil. ......................................................... 13

    II.     Siemens Has Not Alleged "Exclusive Domination and Control" Under
            Delaware Law to Justify Piercing PDVH's Corporate Veil. ................................ 16

    III.    Siemens Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable
            or in the Public Interest Under Delaware (or Even Texas) Law. .......................... 21

Conclusion .................................................................................................................... 26

Copy from re:SearchTX

**Cases**

*Ace Am. Ins. Co. v. Huntsman Corp.*,
  255 F.R.D. 179 (S.D. Tex. 2008) ........................................................ 16

*Administrators of Tulane Educ. Fund v. Ipsen, S.A.*,
  450 F. App'x 326 (5th Cir. 2011) ....................................................... 19

*AHBP LLC v. Lynd Co.*,
  649 F. Supp. 3d 371 (W.D. Tex. 2023) .............................................. 12

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
  545 A.2d 1171 (Del. 1988) ................................................................. 20

*Brown Lab Investments, LLC v. Moesser*,
  No. 01-21-00668-CV, 2023 WL 8631713 (Tex. App.—Houston [1st Dist.]
  Dec. 14, 2023, pet. denied) ...................................................... 13, 17, 21

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
  154 A.2d 684 (Del. 1959) ................................................................... 14

*Cali-Curl, Inc. v. Marianna Indus., Inc.*,
  Civ. A. No. 3:23-CV-00320-K, 2023 WL 6452379 (N.D. Tex. Oct. 3, 2023) ................... 12–13

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
  No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ................................. 14, 15

*Cockrell Inv. Partners, L.P. v. Middle Pecos Groundwater Conservation Dist.*,
  677 S.W.3d 727 (Tex. App. —El Paso 2023) ...................................... 10

*Crosse v. BCBSD, Inc.*,
  836 A.2d 492 (Del. 2003) ................................................................... 14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) .................................................... 10

*Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*,
  879 F.3d 79 (3d Cir. 2018) ........................................................... 15, 16

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
  147 F. App'x 195 (2d Cir. 2005) ........................................................ 23

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995) ............................................................... 19

*Guillory v. Seaton, LLC*,
  470 S.W.3d 237 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ...................................... 12

3

Copy from re:SearchTX

Copy from re:SearchTX

*In re Autobacs Strauss, Inc.*,
  473 B.R. 525 (Bankr. D. Del. 2012) ...................................................... 19

*In re BH S & B Holdings LLC*,
  420 B.R. 112 (Bankr. S.D.N.Y. 2009) .................................................. 19

*In re Opus East, LLC*,
  528 B.R. 30 (Bankr. D. Del. 2015) ...................................................... 19

*In re Teleglobe Commc'ns Corp.*,
  493 F.3d 345 (3d Cir. 2007) ................................................................ 18

*In re The Heritage Org., L.L.C.*,
  413 B.R. 438 (Bankr. N.D. Tex. 2009) ................................................ 19

*In re Tropicana Ent., LLC*,
  520 B.R. 455 (Bankr. D. Del. 2014) .................................................... 18

*Jab Energy Solutions II, LLC v. Servicio Marina Superior, LLC*,
  640 F. App'x 373 (5th Cir. 2016) ........................................................ 23

*Johnson v. Bearfoot Companies*, LLC,
  No. 02-23-00366-CV, 2024 WL 2202033 (Tex. App.—Forth Worth
  May 16, 2024, no pet) .................................................................... passim

*Lucas v. Texas Indus., Inc.*,
  696 S.W.2d 372 (Tex. 1984) ................................................................ 23

*Malik v. GEICO Advantage Ins. Co., Inc.*,
  No. 01-19-00489-CV, 2021 WL 1414275 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021).... 11

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
  251 A.3d 694 (Del. Ch. 2021) ........................................................ passim

*Mason v. Network of Wilmington, Inc.*,
  No. Civ. A 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) ......................................... 16

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989) .......................................................... 18

*Nieves v. Insight Bldg. Co., LLC*,
  No. CV 2019-0464-SG, 2020 WL 4463425 (Del. Ch. Aug. 4, 2020) ......................................... 20

*Northbound Grp., Inc. v. Norvax, Inc.*,
  795 F.3d 647 (7th Cir. 2015) ................................................................ 23

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
  73 F.4th 157 (3d Cir. 2023) ................................................................ 10

*Pac. Dev., Inc. v. United States*,
   No. 77-0690, 1979 WL 1283 (D.D.C. Jan. 3, 1979) ....................................... 20

*Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*,
   974 F.2d 545 (4th Cir. 1992) ............................................................. 23

*Phillips v. Carlton Energy Grp.*, LLC,
   475 S.W.3d 265 (Tex. 2015) ............................................................. 12

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
   No. 2019-0431-JTL, 2024 WL 274246 (Del. Ch. Jan. 25, 2024) .................... 16

*Salazar v. HEB Grocery Co., LP*,
   No. 04–16–00734–CV, 2018 WL 1610942 (Tex. App.—San Antonio
   Apr. 4, 2018, pet. denied) ........................................................... 12, 15

*Teel v. Autonation Motors, LLC*,
   No. 02-20-00419-CV, 2022 WL 123217 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) ....... 21

*Tex. Inns, Inc. v. Prime Hosp. Corp.*,
   462 F.3d 666 (6th Cir. 2006) ............................................................. 23

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006) ........................................................ 16, 20

*Trevino v. Merscorp, Inc.*,
   583 F. Supp. 2d 521 (D. Del. 2008) .................................................... 16

*United States v. Jon-T Chems., Inc.*,
   768 F.2d 686 (5th Cir. 1985) ............................................................ 23

*VFS Fin., Inc. v. Falcon Fifty LLC*,
   17 F. Supp. 3d 372 (S.D.N.Y. 2014) .................................................... 16

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999) ...................................................... 13, 14

*Weizhong Zheng v. Vacation Network, Inc.*,
   468 S.W.3d 180 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) .......... 12, 14

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
   No. 3088-VCP, 2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ....................... 17

## **Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 35.008 ................................................. 11

Tex. Civ. Prac. & Rem. Code Ann. § 37.004 ................................................. 11

Copy from re:SearchTX

**Rules**

Texas Rule of Civil Procedure 91a ......................................................................... passim

**Other Authorities**

1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Corps.*, Ch. 2, § 41.33 .................... 17

Executive Order 13808, 82 Fed. Reg. 166 (Aug. 24, 2017) .................................................... 8, 15

Copy from re:SearchTX

# Introduction

Defendant PDV Holding, Inc. ("PDVH") files this Motion to Dismiss under Texas Rule of Civil Procedure 91a to request that the Court dismiss all counts asserted by Plaintiff Siemens Energy, Inc. Plaintiff fails to assert any basis in law or fact to support its extraordinary request to reverse-pierce the veil of an American corporate citizen to satisfy the alleged debt from the note entered in 2017 between Siemens and a foreign entity, Petróleos de Venezuela, S.A. ("PDVSA").

# Summary of Argument

In 2017, Siemens executed a promissory note with PDVSA ("2017 Note"), the Venezuelan national oil company. After PDVSA defaulted on the note, Siemens obtained a junior writ of attachment against the shares of PDVH, PDVSA's wholly owned Delaware subsidiary. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del.). In *Crystallex*, the District of Delaware has since 2021 overseen a forced sale of the PDVH shares to satisfy over $20 billion in judgments held by eighteen groups of creditors of Venezuela and/or PDVSA, including Siemens. "Due to uncertainty surrounding" whether there will be enough sale proceeds to satisfy Siemens's judgment, however, ¶ 11,[1] Siemens now has filed this alter ego action against PDVH directly to try to jump the line ahead of senior attachment holders, even though Siemens does not and cannot allege that PDVH had anything to do with the note, that Siemens was misled into believing PDVH's assets would be available to pay PDVSA's debt to Siemens, or that PDVSA transferred assets to PDVH that should have gone to Siemens. Under such circumstances, Siemens's inequitable and insufficient attempt to pierce PDVH's corporate veil must be dismissed.

*First*, Siemens does not come close to alleging "fraud or similar injustice" in the use of corporate form as required by Delaware law, which Siemens agrees governs attempts to pierce the

---

[1] The Petition is cited as "¶ __."

Copy from re:SearchTX

veil of a Delaware corporation like PDVH. Siemens complains that PDVH paid excessive dividends to PDVSA in 2015 and pledged its assets to support PDVSA's obligations to other creditors in 2016, ¶¶ 14–16, but that is not a fraud in the corporate form as to creditors of PDVSA, and in any event, these transfers occurred *before* Siemens executed the note in 2017. If anything, PDVH's payment of dividends only enhanced PDVSA's creditworthiness when Siemens chose to loan PDVSA money. Siemens also vaguely alleges that PDVH's indirect subsidiary CITGO Petroleum Corporation ("CITGO") borrowed money in 2019 that was paid up the corporate chain and used by PDVSA to satisfy the debts of PDVSA's parent Venezuela. ¶ 17. It is unclear how Siemens thinks this could have occurred given that, in 2017, the U.S. government blocked all dividends or transfers to PDVSA or Venezuela without a specific license from the Treasury Department's Office of Foreign Assets Control. *See* E.O. 13808, 82 Fed. Reg. 166, 41155–56 (Aug. 24, 2017). But even if this allegation were true (which it is not), Siemens is not a creditor of CITGO, and Delaware law is clear that transfers *to* a debtor by a non-debtor are not a fraud in the corporate form. If Siemens believes PDVSA improperly used funds to pay Venezuela's creditors that should instead have gone to Siemens, its grievance is with PDVSA. Ultimately, the only purported injustice Siemens alleges is the potential that there will be insufficient value in the PDVH shares to satisfy all of PDVSA's and Venezuela's many creditors, which is insufficient to pierce the corporate veil under Delaware law.

*Second*, Siemens does not and cannot adequately allege the other elements of a claim for reverse veil-piercing under Delaware law. Instead of the typical veil-piercing claim, where a creditor of a corporation seeks to pierce the corporate veil to reach the assets of the corporation's shareholder or parent, a reverse-piercing claim involves a creditor of the shareholder or parent seeking to pierce the veil to reach the assets of the subsidiary corporation. Delaware allows such

Copy from re:SearchTX

claims only in extraordinary circumstances and thus requires a plaintiff in a reverse veil-piercing case not only to show the ordinary elements of veil-piercing—fraud and exclusive domination or control—but also that reverse piercing would be inequitable in light of eight additional factors.

Siemens includes conclusory allegations of exclusive domination or control, but it does not even attempt to demonstrate that reverse-piercing would be equitable or serve the public interest under the eight factors Delaware law *additionally* requires before reverse-piercing. Far from it, Siemens's requested relief here would be *in*equitable and *contravene* the public interest, as evidenced by the fact that Siemens holds diametrically opposed positions in two separate lawsuits simultaneously seeking to recover on the same defaulted 2017 Note: in *Crystallex*, Siemens's priority claim relies on the integrity of PDVH's separate legal and factual existence; here, Siemens asserts the incompatible allegation that PDVH is a sham whose separate corporate existence should be disregarded. Siemens cannot call on equity to eat its cake and have it too. In fact, its relief here would allow Siemens to cut the *Crystallex* line to the detriment of innocent creditors who also rely on PDVH's separate existence to collect on their debt against PDVSA or Venezuela. This is fundamentally inequitable and not the purpose of alter ego doctrine.

## Background

Plaintiff is the successor of Dresser-Rand Company ("D-R") after D-R and Siemens merged. ¶ 9 & n.2. Siemens alleges "[o]n information and belief" that, in 2015, PDVH caused CITGO Holding, Inc. ("CHI") to issue a $2.8 billion dividend. ¶¶ 14–15. The following year PDVSA issued $3 billion in new bonds to refinance its maturing debt while allegedly causing PDVH to pledge its assets to help secure those bonds. ¶ 16. After these events, Siemens voluntarily

Copy from re:SearchTX

executed a promissory note in 2017 with PDVSA. ¶¶ 9–10.[2] Siemens does not allege that it sought a guaranty from PDVH. Nor does Siemens allege that PDVH agreed to provide any financial credit or support for the 2017 Note. Two years after executing its note, Siemens alleges that PDVH caused CHI to issue more debt, which was paid up the corporate chain to PDVSA and then used "to pay *Venezuela's* debts," which Siemens characterizes as fraudulent conduct. ¶ 17 (emphasis in original).

In 2021, after PDVSA allegedly defaulted on the 2017 Note, Siemens obtained a judgment against PDVSA in the U.S. District Court for the Southern District of New York for an amount now worth over $200 million ("Judgment"). ¶¶ 3, 9–10; *see* Pet. Ex. 1. Plaintiff alleges that the Judgment is unsatisfied. ¶ 10. To enforce the Judgment, Siemens obtained a writ of attachment on the stock of PDVH in *Crystallex*. ¶ 11. In *Crystallex*, creditors of the Republic[3] and PDVSA have been pursuing post-judgment enforcement proceedings since 2017, seeking to execute on PDVSA's shares of stock in PDVH. *See* ¶ 11. PDVH is a Delaware corporation and wholly owned by PDVSA. ¶¶ 5, 12. PDVH is the sole owner of CHI, which is the sole owner of CITGO Petroleum Corporation, a major U.S. oil refiner in Texas and the creditors' real target. ¶ 12; *see also OI European Group B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 163 (3d Cir. 2023) (explaining that *Crystallex* creditors seek to "ultimately . . . reach funds in [CHI], a Delaware corporation indirectly owned by PDVH"). The *Crystallex* court has appointed a special master to

---

[2] The Court "may take judicial notice of the record and judgment in a connected or related case." *Cockrell Inv. Partners, L.P. v. Middle Pecos Groundwater Conservation Dist.*, 677 S.W.3d 727, 734 n.3 (Tex. App. —El Paso 2023); *see also* ¶ 11 (identifying *Crystallex* as related case); *accord Crystallex*, Dkt. 1113-2, at 1–2 (D. Del. Apr. 9, 2024) (identifying January 20, 2017 as the date of the note between D-R and PDVSA alleged in ¶ 9).

[3] Creditors of the Republic have been permitted to attach PDVSA's assets based on a limited finding of alter ego between Venezuela and PDVSA. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd* 932 F.3d 126 (3d Cir. 2019); *see also supra* n.2 (noting that this Court may take judicial notice of *Crystallex*).

Copy from re:SearchTX

oversee a public auction of the shares. ¶ 11. Eighteen creditors with over $21 billion in total judgments are participating in the Delaware proceedings.[4] In April 2024, the Delaware court issued a final priority order, placing Siemens in eleventh place behind roughly $6.8 billion in judgments.[5]

Notwithstanding that Siemens is a creditor within the priority order, and thus stands to collect on the Judgment in *Crystallex*, Siemens filed this copycat alter ego lawsuit in October 2024 merely in light of potential "uncertainty" over its prospect of collecting money in the *Crystallex* proceeding. ¶ 11. In particular, this lawsuit follows "the filing by certain creditors of veil piercing actions against PDVH" in which the plaintiffs seek to enforce their judgments against PDVH under state law by obtaining a declaration that PDVH is the alter ego of PDVSA. ¶¶ 11, 20–28 (citing Tex. Civ. Prac. & Rem. Code Ann. § 35.008 & § 37.004); *see also id*. n.4 (collecting cases). In support of its extraordinary request to pierce the veil of a longstanding American corporate citizen, Siemens sets forth just four paragraphs containing three sets of conclusory factual allegations. ¶¶ 14–17. According to the *Crystallex* special master, if successful, Siemens (and others) "threaten to render the PDVH [stock] worthless," derailing the *Crystallex* sales process.[6]

### Standard of Review and Applicable Law

Texas Rule of Civil Procedure 91a "authorizes a defendant to move for dismissal of a cause of action that 'has no basis in law or fact.'" *Malik v. GEICO Advantage Ins. Co., Inc.*, No. 01-19-00489-CV, 2021 WL 1414275, at *3 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021). "Courts have concluded that a cause of action has no basis in law under Rule 91a" when "the petition alleges too few facts to demonstrate a viable, legally cognizable right to relief." *Id*. (collecting cases);

---

[4] *Crystallex*, Dkt. 1102, at 3–5 (D. Del. Apr. 3, 2024).

[5] *Crystallex,* Dkt. 1102, at 3–4 (D. Del. Apr. 3, 2024).

[6] *Crystallex,* Dkt. 1415, at 3 (D. Del. Nov. 6, 2024).

Copy from re:SearchTX

*accord Guillory v. Seaton, LLC,* 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("In short, the plaintiff must plead sufficient facts to supply a legal basis for his claim."). Courts also hold that, while pleadings are liberally construed in favor of the plaintiff, "vague and conclusory allegations are not sufficient to satisfy the fair-notice and Rule 91a standards." *Johnson v. Bearfoot Companies*, LLC, No. 02-23-00366-CV, 2024 WL 2202033, at *2, *4 (Tex. App.—Fort Worth May 16, 2024, no pet) (mem. op.). Further, when the plaintiff alleges fraud, courts require factual specificity to satisfy fair notice pleading. *Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). "[T]hreadbare recital[s]" of fraud fail to provide fair notice. *Id*. A cause of action has no basis in fact under Rule 91a "if no reasonable person could believe the facts pleaded." Tex. R. Civ. P. 91a.1; *see, e.g.*, *Salazar v. HEB Grocery Co., LP*, No. 04–16–00734–CV, 2018 WL 1610942, at *5 (Tex. App.—San Antonio Apr. 4, 2018, pet. denied) (holding that conspiracy claim had no basis in fact because "no reasonable person" could believe in the alleged conspiracy).

"The parties agree that Delaware's substantive law governs this case." *Siemens v. PDVH, Scheduling Conference Report, Discovery Control Plan, and Scheduling Order*, Cause No. 24-BC11B-0010 ¶ 1 (Dec. 2, 2024). Delaware law applies because, under Texas's choice-of-law rules, courts must apply the law of the state of incorporation to corporate veil issues. *See Phillips v. Carlton Energy Grp.*, LLC, 475 S.W.3d 265, 283 (Tex. 2015) (applying the law of the state of incorporation to alter ego determination) (citing Tex. Bus. Orgs. Code § 1.104); *see also AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 385 (W.D. Tex. 2023) ("Under Texas's choice-of-law rules, whether a corporation . . . may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized.") (internal quotation marks omitted); *Cali-Curl, Inc. v. Marianna Indus., Inc.*, Civ. A. No. 3:23-CV-00320-K, 2023 WL 6452379, at *5 (N.D.

Copy from re:SearchTX

Tex. Oct. 3, 2023) (same). "Because [PDVH] is a Delaware [corporation], Delaware law governs the alter ego determination" here. *Brown Lab Investments, LLC v. Moesser*, No. 01-21-00668-CV, 2023 WL 8631713, at *9 n.15 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, pet. denied).

## Argument and Authorities

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). It requires a court to make two findings: "the corporate structure cause[d] fraud or similar injustice" and "exclusive domination and control" by one corporate entity over the other. *Id*. at 1184. The typical veil-piercing case involves a creditor seeking to reach the assets of a debtor's parent corporation. Siemens here seeks the opposite: a "reverse veil-pierce" where it tries to disregard the parent's separate existence to attach the subsidiary's assets. In addition to the two requirements above, the reverse-pierce plaintiff must prove a third: that taking the extraordinary step of holding a corporation liable for the debts of its shareholder would be equitable in light of the interests of the corporation's creditors, innocent third parties, and other important public policies. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021).

## I. Siemens Has Not Alleged "Fraud or Similar Injustice" Under Delaware Law to Justify Piercing PDVH's Corporate Veil.

The alter ego claim fails as a threshold matter because Siemens has not alleged facts showing "fraud or similar injustice" through misuse of the corporate form to support the relief sought here. Tex. R. Civ. P. 91a.1. The factual allegations that Siemens points to are inadequate to satisfy Texas pleading standards for alleging fraud and, in any event, do not show fraud or similar injustice as a matter of Delaware law.

The Delaware Supreme Court has held that, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created *a*

Copy from re:SearchTX

*sham entity designed to defraud investors and creditors.*" *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (emphasis added); *accord Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *6 (Del. Ch. Sept. 5, 2023) ("The fraud or injustice must, however, 'come from an inequitable use of the corporate form itself as a sham[.]'") (collecting cases). Attempts to enforce a judgment through reverse-piercing are no exception. As the Delaware Supreme Court also has held, "[a] creditor of the parent corporation may not, *in the absence of fraud*, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959) (emphasis added). The requirement to establish that "the corporate structure cause[s] fraud or similar injustice" is a high bar. *Wallace*, 752 A.2d at 1184.

The Petition does not meet this high bar. Siemens complains that PDVH paid excessive dividends to PDVSA in 2015 and pledged its assets to support PDVSA's obligations to other creditors in 2016, ¶¶ 14–16, but these transfers occurred before Siemens agreed to loan money to PDVSA in 2017 and thus could not constitute a fraud or similar injustice as to Siemens. If anything, these transfers *enhanced* PDVSA's creditworthiness. While Siemens vaguely alleges that the payment of dividends in 2015 was issued "in a manner intended to make such funds unavailable to creditors in the United States," ¶ 14, Texas law is clear that such "vague and conclusory allegations are not sufficient to satisfy the fair-notice and Rule 91a standards," *Bearfoot*, 2024 WL 2202033, at *4, and certainly do not provide the factual specificity necessary to support allegations of fraud, *see Weizhong Zheng*, 468 S.W.3d at 186. Moreover, Siemens itself alleges facts indicating why PDVSA needed the dividends: "looming debt maturity." ¶ 16.

Copy from re:SearchTX

The Petition's vague allegation that CITGO sent $1.3 billion up the corporate chain to PDVSA to pay Venezuela's creditors in 2019 suffers from another defect: In 2017, the President of the United States issued an Executive Order explicitly prohibiting "dividend payments or other distributions of profits to the Government of Venezuela from any entity owned or controlled, directly or indirectly, by the Government of Venezuela" without a specific license from OFAC. E.O. 13808 § 1(a)(iv). The *Crystallex* court further attached the shares of PDVH in 2018, prohibiting PDVH from paying any dividends to PDVSA until that attachment is released.[7] Siemens does not attempt to explain how PDVH could have made a $1.3 billion dividend or other distribution to PDVSA under such circumstances. *See Salazar*, 2018 WL 1610942, at *5 (dismissing claim under Rule 91a because "no reasonable person could believe the facts pleaded").

In any event, Siemens's theory of fraud or similar injustice fails as a matter of law. It is not a fraud in the use of the corporate form under Delaware law for a non-debtor to pay money to a debtor. For example, in *Cleveland-Cliffs*, a plaintiff alleged a "sale was a sham intended to place the assets out of certain creditors' reach." 2023 WL 5688392, at *1. The Delaware Chancery Court dismissed the veil-piercing claim because even if the sale could be construed as a fraudulent transfer, the alleged conduct was not an "inequitable use of the corporate form itself as a sham." *Id.* at *6. Indeed, the Third Circuit has already held that the exact same dividends and pledges that Siemens complains about here do *not* constitute a fraudulent transfer under Delaware law, because transfers by a non-debtor (here, PDVH) to a debtor (here, PDVSA) cannot be fraudulent as to the debtor's creditors (here, Siemens). *Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018).[8] Siemens complains that PDVH should consider PDVSA's "creditors in the

---

[7] *See Crystallex*, Dkt. 1277 at 2–3; *see also supra* n.3.

[8] The Third Circuit left open the possibility that a transfer by a non-debtor could be considered

Copy from re:SearchTX

United States," ¶ 14, but a subsidiary has no obligation to operate for its parent's creditors' benefit. *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 201–03 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438, 202 (Del. 2007).

Ultimately, the only purported fraud or similar injustice Siemens alleges is the potential that there will be insufficient value in the PDVH shares to satisfy all of PDVSA's and Venezuela's many creditors in the *Crystallex* proceedings. But "the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (citing *Mason v. Network of Wilmington, Inc.*, No. Civ. A 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005)).

Having failed to meet the "fraud or similar injustice" prong of the alter ego test, nothing further is needed to hold that the alter ego claim fails as a matter of bedrock Delaware law. *See, e.g.*, *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 198, 208 (S.D. Tex. 2008) (Rosenthal, J.) (failure to allege "fraud or similar injustice" is basis to dismiss Delaware alter ego allegation); *accord VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 384 (S.D.N.Y. 2014) (same). Yet the Petition is deficient for other reasons as well.

## II. Siemens Has Not Alleged "Exclusive Domination and Control" Under Delaware Law to Justify Piercing PDVH's Corporate Veil.

Even if Siemens had sufficiently alleged fraud or injustice, its allegations of "extensive control" by PDVSA over PDVH are insufficient. Delaware law presumes that a wholly owned subsidiary is not the alter ego of its parent company. *Principal Growth Strategies, LLC v. AGH Parent LLC*, No. 2019-0431-JTL, 2024 WL 274246, at *16 (Del. Ch. Jan. 25, 2024) ("[T]here

---

fraudulent if the non-debtor were the alter ego of the debtor. *Crystallex*, 879 F.3d at 86. But if PDVH's dividends could themselves have established alter ego, then the Third Circuit would not have ordered dismissal of the fraudulent transfer claim.

Copy from re:SearchTX

exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors."). Instead, Delaware courts consider the following non-dispositive factors when assessing "extensive control": "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; or (5) whether, in general, the company simply functioned as a facade for the controlling shareholder." *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. 3088-VCP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008); *see also Manichaean Cap.*, 251 A.3d at 706–07 (considering same factors in reverse veil-piercing context). As Texas courts have recognized when assessing these factors, "corporate veil-piercing [is only] necessary and appropriate" in "exceptional cases." *Brown Lab*, 2023 WL 8631713, at *9–*11 (reversing veil-piercing decision).

*Undercapitalization*—Plaintiff fails to allege that PDVH "was [not] adequately capitalized for the undertaking" of being a holding company for a refiner and marketer of petroleum products, either upon formation or any other time. *Manichaean Cap.*, 251 A.3d at 706; 1 Fletcher Cyc. Corp. § 41.33 ("Adequacy of capitalization must be measured at the time of incorporation because it reveals whether the corporation was created to avoid liability."). The allegation that PDVH was "undercapitalized" because it paid dividends to PDVSA, *see* ¶¶ 15, 22, is not only vague and conclusory, *Bearfoot*, 2024 WL 2202033, at *4, but also fails to establish that PDVH was undercapitalized for its own undertakings. *See* 1 Fletcher Cyc. Corp. § 41.33 ("'Inadequate capitalization' . . . generally means capitalization very small in relation to the nature of the business of the corporation and the risks attendant to such businesses.").

*Solvency*—"Under Delaware law, a corporation is insolvent if it has: '1) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued

Copy from re:SearchTX

in the face thereof, or 2) an inability to meet maturing obligations as they fall due in the ordinary course of business.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 384 (3d Cir. 2007) (quoting *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004)). Although Siemens alleges the conclusion that "PDVSA [] intentionally left PDVH insolvent," ¶ 22, there are no factual allegations "to satisfy the fair-notice and Rule 91a standards" to support that conclusion, *Bearfoot*, 2024 WL 2202033, at *4. No "reasonable person could believe [these] facts pleaded" anyway, *id*. at *2 (quoting Tex. R. Civ. P. 91a.1), given that PDVH continues as a going concern more than nine years after *Crystallex* began and is currently the subject of a multi-billion-dollar bid in a judicial sale to satisfy debts owed to other PDVSA creditors. *See* ¶ 11; *see also supra* pp. 3-4 (explaining *Crystallex*); *In re Tropicana Ent., LLC*, 520 B.R. 455, 472 (Bankr. D. Del. 2014) (mere recitation of "conclusory statements" insufficient to plead insolvency under Delaware law). Indeed, the whole premise of Siemens's effort to attach PDVH's shares in *Crystallex* and impose personal liability against PDVH here is that PDVH *is* solvent.

*Corporate Formalities*—To pierce the corporate veil, courts applying Delaware law consider whether the corporation "failed to observe certain corporate formalities." *Manichaean*, 251 A.3d at 708. Formalities include whether the entities kept distinct addresses, records, accounts, personnel, and operations. *See id*. at 708; *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989) (observing formalities such as distinct "assets" and "operations"). Siemens asserts one sentence about formalities: "PDVSA [] ignored corporate distinctions and formalities between PDVSA and PDVH, including by exercising complete control over PDVH and directing PDVH's daily affairs for the sole benefit of PDVSA." ¶ 22. This bare recitation is bereft of facts to provide PDVH fair notice of the nature of the controversy. If Siemens means to allege that PDVH declined to observe formalities because PDVSA was involved in transactions related to

Copy from re:SearchTX

dividends and bonds, *see* ¶¶ 14–17, such an allegation is insufficient to state a claim, *see, e.g.*, *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331–33 (5th Cir. 2011) (per curiam) (declining to find alter ego because the parent did not control its wholly owned subsidiary even though the parent oversaw operations, research, and budget); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459–60 (2d Cir. 1995) ("[T]he district court correctly concluded that it could find no domination based on" the fact that the parent's approval was required for the subsidiary's transactions since "this type of conduct is typical of a majority shareholder or parent corporation.") (collecting cases); *In re BH S & B Holdings LLC*, 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009) ("Courts refuse to pierce the veil just because parent corporations retain decision-making authority over subsidiaries.") (collecting cases). Just as important, these allegations are vague and conclusory, making them insufficient to satisfy Rule 91a. *Bearfoot*, 2024 WL 2202033, at *2, *4.

*"Siphoning" of Funds*—Plaintiff characterizes PDVH's dividends as "siphoning funds." ¶¶ 12, 14–15, 17–18. That is nonsense. "Siphoning suggests 'the improper taking of funds that the owner was not legally entitled to receive.'" *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 557 (Bankr. D. Del. 2012) (quoting *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 517 n.69 (Bankr. N.D. Tex. 2009)). The term does not apply to the issuance of properly declared dividends, to which a shareholder is legally entitled. *See The Heritage Org.*, 413 B.R. at 517 n.69 (explaining that "siphoning funds is different than making distributions to members that are permitted by law"). "In fact, it is usually the failure to pay dividends (while instead siphoning funds from the subsidiary though other means) that" justifies piercing the corporate veil. *In re Opus East, LLC*, 528 B.R. 30, 63–64 (Bankr. D. Del. 2015) (holding that dividends are not siphoning and do "not favor piercing the corporate veil" under Delaware law).

Siemens then suggests that it was somehow improper for PDVH to issue these dividends

Copy from re:SearchTX

when its parent was in extreme financial distress. *See* ¶ 17 (alleging that "PDVSA came back for more" when "conditions in Venezuela deteriorat[ed]"). But directors of a wholly owned subsidiary (like PDVH) are obligated by their fiduciary duties to operate the company for the benefit of its shareholder (like PDVSA) and indeed are authorized by law to follow a sole shareholder's instructions. *See, e.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[I]n a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders."); *Trenwick*, 906 A.2d at 201–03 (explaining that directors of a subsidiary are "entitled to follow the parent's instructions unless those instructions require[] the board to violate the legal rights of others," and they have no "duty to second-guess the business judgment of its parent corporation when following and supporting the parent's strategy would not violate any legal obligation the subsidiary owes to another").

Moreover, while it makes sense in the traditional veil-piercing context to consider whether the parent "siphoned" its funds, that conduct has less relevance (if any) in the reverse-piercing context, where it helps the parent's creditor to enhance the parent's financial standing. *See Pac. Dev., Inc. v. United States*, No. 77-0690, 1979 WL 1283, at *2 (D.D.C. Jan. 3, 1979), *aff'd sub nom. Valley Fin., Inc. v. United States*, 629 F.2d 162 (D.C. Cir. 1980). For example, as Siemens alleges, the $1.3 billion in debt CITGO issued was used to "pay *Venezuela's* debts." ¶ 17.

*General Façade*— Siemens implies that PDVSA and PDVH are not "separate entities" due to board overlap. ¶ 18. It is well-settled Delaware law, however, that the overlap of personnel and directors between members of a corporate family does not suffice to pierce the corporate veil. *Nieves v. Insight Bldg. Co., LLC*, No. CV 2019-0464-SG, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) (explaining that Delaware law presumes a subsidiary is distinct from its parent and that

Copy from re:SearchTX

"[s]imilarities between entities, such as overlap of personnel, do not negate this basic principle: This rule applies even where one corporation wholly owns another and even though the entities have identical officers and directors." (internal quotation marks omitted)).

Siemens's other allegations of control are, yet again, conclusory. *See* ¶ 12 ("PDVSA . . . has exerted complete control and dominance over PDVH, and has used PDVH not as a separate entity, but as a tool and means to siphon funds to avoid paying its debts."); ¶ 22 ("PDVSA . . . exercise[es] complete control over PDVH and directing PDVH's daily affairs for the sole benefit of PDVSA."). This will not suffice. Delaware (and Texas) courts are clear that piercing the veil is "extremely rare" because "Delaware embraces and will protect 'corporate separateness.'" *Manichean*, 251 A.3d at 713–14 & n.117; *Brown Lab*, 2023 WL 8631713, at *9–*11 ("exceptional cases"). Texas courts are equally clear that "[u]nadorned recitals of the elements of a cause of action, supported by mere conclusory statements, fail to sufficiently allege a cause of action under the fair-notice and Rule 91a standards." *Teel v. Autonation Motors, LLC*, No. 02-20-00419-CV, 2022 WL 123217, at *4 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.) (internal quotation marks omitted).

### III. Siemens Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest Under Delaware Law.

In a reverse-piercing case, a plaintiff must also demonstrate that disregarding corporate separateness is equitable in light of the interests of creditors, third parties, and public policy. Eight factors inform this inquiry. These are:

(1) the potential impairment of "the legitimate expectations of any adversely affected [non-responsible] shareholders" and the potential for "a precedent troubling to shareholders generally";

(2) the degree of the subsidiary's exercise of "dominion and control" over the parent;

Copy from re:SearchTX

(3) the degree to which the injury "is related to [that] dominion and control" or the plaintiff's "reasonable reliance upon a lack of separate entity status";

(4) the degree to which reverse piercing would serve "the public convenience, as articulated by the Delaware General Corporation Law and Delaware's common law";

(5) "the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider";

(6) "the possibility that the [plaintiff] is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief";

(7) the potential harm to the subsidiary's "innocent third-party creditors"; and

(8) "the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt."

*Manichaean Cap.,* 251 A.3d at 715 (cleaned up).

Siemens does not even try to allege these factors, which is sufficient reason to dismiss the Petition. Moreover, the facts Siemens does allege make clear that it would be utterly inequitable to reverse-pierce. Siemens already has a writ of attachment on the PDVH stock in *Crystallex* where it is relying upon corporate separateness to collect on its Judgment. Due to *potential* "uncertainty" in those proceedings, however, Siemens is attempting to inequitably cut the *Crystallex* line with this action to the detriment of innocent third-party creditors, all of whom have acted in reliance on PDVH's separate corporate existence. The absence of equity is another reason to dismiss the Petition.

*First*, Siemens cannot establish "reasonable reliance upon a lack of separate entity status between" PDVSA and PDVH when it executed its note (Factor 3). "[V]eil piercing in the contract context is infrequent [] because the party seeking relief 'is presumed to have voluntarily and

22

Copy from re:SearchTX

knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form.'" *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 198 (2d Cir. 2005). Courts thus require a party seeking to pierce the corporate veil in a contract case to demonstrate that it was duped about the separate corporate existence of its counterparty's affiliates *at the time of contracting*; otherwise, there is no equitable basis to pursue a corporate affiliate from which it could have negotiated a guaranty (or sought other protection) at the time of contracting. *See, e.g.*, *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 693 (5th Cir. 1985) ("If the creditor wants to be able to hold the parent liable for the subsidiary's debts, it can contract for this."); *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984) ("Courts have generally been less reluctant to disregard the corporate entity in tort cases than in breach of contract cases.").[9] Here, the relevant contract is the 2017 Note that Siemens entered with full knowledge of who was responsible for payment: PDVSA. ¶¶ 9–10. The allegation that executing directly against PDVSA may have been difficult does not demonstrate that Siemens relied upon the alleged lack of separateness between PDVSA and PDVH. Indeed, in the *Crystallex* proceeding, Siemens is relying on PDVSA's and PDVH's separate corporate identities by attaching and seeking to reap proceeds from the sale of the PDVH stock to a third-party purchaser. In other words, in Delaware, Siemens seeks to benefit from PDVH's separate corporate existence as an asset of PDVSA, while here it alleges that PDVH has no separate corporate existence.

*Second*, Siemens does not allege that PDVH controlled PDVSA (Factor 2) or that PDVH itself engaged in "wrongful conduct" (Factor 5). On the contrary, the allegations indicate that

---

[9] *See also Jab Energy Solutions II, LLC v. Servicio Marina Superior, LLC*, 640 F. App'x 373, 379 (5th Cir. 2016) (per curiam); *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652 (7th Cir. 2015) (Illinois law); *Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 679 n.16 (6th Cir. 2006) (citing Fletcher treatise; applying state law); *Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*, 974 F.2d 545, 550 (4th Cir. 1992) (citing Fletcher treatise).

Copy from re:SearchTX

PDVH at most acted consistently with its fiduciary obligations to follow the instructions of its sole shareholder by paying dividends and pledging its assets to help its parent avoid a default. Siemens also makes no allegation—nor could one conceivably be made—that PDVH's nonexistent control over PDVSA or nonexistent wrongful conduct caused Siemens's injury (Factor 3).

*Third*, Siemens is itself guilty of wrongful conduct, which conduct directly threatens the legitimate reliance interests of the potential buyer of the PDVH shares and third-party creditors (Factors 1, 6, 7). *Manichaean*, 251 A.3d at 716 (assessing potential harm to "innocent shareholders or creditors" of the subsidiary). For years, Siemens has sought to benefit from the marketing of the PDVH shares to innocent third-party bidders, whom it is hoping will pay billions of dollars to Siemens and other creditors on the premise that PDVH is a separate corporation with substantial value. Yet now Siemens has turned around and attempted to siphon substantial value out of those shares on the ground that PDVH is liable for all of PDVSA's unsatisfied debts. If this gambit succeeds, then the purchaser will have paid billions of dollars for a materially diminished asset. It also would be inequitable and contravene the public interest to permit Siemens to reverse-pierce here to the detriment of those senior creditors who have been relying on PDVH's corporate separateness for years as they and Siemens have obtained attachments, litigated priority to proceeds, and spent tens of millions of dollars on the execution sale. This is to say nothing of the harm that reverse-piercing would have on creditors of PDVH who would suddenly find their legitimate interests in jeopardy.

Siemens contends that "[t]his action is *not* intended to circumvent or frustrate" *Crystallex*. ¶ 11 n.4. The *Crystallex* special master disagrees. He recently moved to enjoin Siemens "from asserting or further prosecuting in any court other than [in the *Crystallex* court] any alter ego or reverse veil-piercing theories against PDVH or any of its direct or indirect subsidiaries for

Copy from re:SearchTX

liabilities of . . . PDVSA." *See also* ¶ 11 n.4 (describing injunction motion). The special master explains that, while Siemens may not "intend[] to circumvent or frustrate" *Crystallex*, "there can be little doubt that" this action "risk[s] unsettling [that] sale proceeding."[10] For example, if PDVH is sold to a new owner and Siemens is permitted to seize PDVH's assets, then Siemens will have interfered with the disposition of the PDVH shares and undermined the legitimate expectations of PDVH's (potential and foreseeable) new shareholders.

*Fourth*, reverse piercing here would "establish a precedent troubling to shareholders generally [Factor 1]," especially shareholders of Delaware corporations. Siemens seeks to pierce PDVH's veil based on conduct that under Delaware jurisprudence does *not* warrant disregard of the corporate form. A decision in Siemens's favor would thus put a Texas business court in the position of contravening Delaware public policy and diluting Delaware law's stringent protection of corporate separateness (*see* Factor 4).

*Finally*, Siemens does have another remedy available to it (Factor 8): pursuing its claims in the *Crystallex* process—as it is already doing. *See* ¶ 11. Siemens is only filing this lawsuit due to potential "uncertainty surrounding" its ability to collect on the Judgment in *Crystallex*, ¶ 11. In other words, Siemens already has a writ of attachment on the stock of PDVH in *Crystallex*, and it is concerned that there won't be enough proceeds to satisfy its judgment after more senior attachment holders are paid. It is therefore bringing this lawsuit to cut the *Crystallex* line to collect ahead of more senior creditors. Yet where "traditional judgment collection measures" provide a practically available remedy, as here in *Crystallex*, "reverse piercing . . . would be unnecessarily extreme and inappropriate." *Manichaean*, 251 A.3d at 718.

---

[10] *Crystallex,* Dkt. 1374-1, at 3 ¶ 5 (D. Del. Oct. 18, 2024). The court is expected to issue a final order on the injunction motion on December 13, 2024, having just announced its initial "inclinations." *See Crystallex,* Dkt. 1433 (issuing initial "inclinations" on injunction request).

Copy from re:SearchTX

Copy from re:SearchTX

## Conclusion

Siemens was not deceived by irregularities of corporate form and is not suing to uncover its debtor's hidden assets. It is a sophisticated business that executed a multimillion-dollar promissory note with PDVSA in 2017 with eyes wide open about the prospect of recovery, and its longstanding attempt to recover from the sale of PDVH's shares to a third-party purchaser in *Crystallex* rests on the premise that PDVH is a separate and genuinely substantive entity rather than a sham. Far from promoting justice and upholding public policy, permitting an alter ego claim here would disserve those values. PDVH respectfully requests that the Petition be dismissed.

Dated: December 9, 2024

Respectfully submitted,

**EIMER STAHL LLP**

By: /s/ Nathan P. Eimer

Nathan P. Eimer
State Bar No. 24001478
neimer@eimerstahl.com
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

*Attorney-In-Charge for Defendant*
*PDV Holding, Inc.*

**Of Counsel:**
Scott C. Solberg (*pro hac vice forthcoming*)
ssolberg@eimerstahl.com
Daniel D. Birk (*pro hac vice forthcoming*)
dbirk@eimerstahl.com
James W. Joseph (*pro hac vice forthcoming*)
jjoseph@eimerstahl.com
Gregory M. Schweizer (*pro hac vice forthcoming*)
gschweizer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

David J. Beck
State Bar. No. 00000070
dbeck@beckredden.com
Kaitie Sorenson
State Bar No. 24128633
ksorenson@beckredden.com
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Fax: (713) 951-3720

Copy from re:SearchTX

Copy from re:SearchTX

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant PDVH certifies that this brief contains 6,535 words, which complies with the word limit of Texas Business Court Rule 5(a).

*/s/ Nathan P. Eimer*
Nathan P. Eimer

## REQUEST FOR ORAL HEARING

Under Texas Business Court Rule 5(e), Defendant PDVH requests the Court hear this Motion by oral hearing. Defendant requests equal time to respond to Plaintiff's arguments.

*/s/ Nathan P. Eimer*
Nathan P. Eimer

## CERTIFICATE OF SERVICE

I certify that on December 9, 2024, a true and correct copy of **PDV Holding, Inc.'s Motion to Dismiss Pursuant to Texas Rule of Civil Procedure 91a** was filed via the court's efiling system, which will automatically serve a Notice of Electronic Filing to all registered users.

*/s/ Nathan P. Eimer*
Nathan P. Eimer

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Erin Rogers on behalf of Nathan Eimer
Bar No. 24001478
erogers@eimerstahl.com
Envelope ID: 95118037
Filing Code Description: Motions - All Other
Filing Description: PDV Holding, Inc.???s Motion to Dismiss Pursuant to
Texas Rule of Civil Procedure 91a
Status as of 12/10/2024 7:55 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David J.Beck | | dbeck@beckredden.com | 12/9/2024 6:49:48 PM | SENT |
| Francisco Rivero | | frivero@reedsmith.com | 12/9/2024 6:49:48 PM | SENT |
| Arturo Munoz | | amunoz@reedsmith.com | 12/9/2024 6:49:48 PM | SENT |
| Karen S.Wright | | kwright@reedsmith.com | 12/9/2024 6:49:48 PM | SENT |
| Kenneth E.Broughton | | kbroughton@reedsmith.com | 12/9/2024 6:49:48 PM | SENT |
| Division 11B | | BCDivision11B@txcourts.gov | 12/9/2024 6:49:48 PM | SENT |
| Kaitie Sorenson | | ksorenson@beckredden.com | 12/9/2024 6:49:48 PM | SENT |
| Nathan  PEimer | | neimer@eimerstahl.com | 12/9/2024 6:49:48 PM | SENT |
| Erin MRogers | | erogers@eimerstahl.com | 12/9/2024 6:49:48 PM | SENT |
| Dan DBirk | | dbirk@eimerstahl.com | 12/9/2024 6:49:48 PM | SENT |
| John KAdams | | jadams@eimerstahl.com | 12/9/2024 6:49:48 PM | SENT |
| James WJoseph | | jjoseph@eimerstahl.com | 12/9/2024 6:49:48 PM | SENT |
| Scott CSolberg | | ssolberg@eimerstahl.com | 12/9/2024 6:49:48 PM | SENT |
| Benjamin B.Breckler | | bbreckler@reedsmith.com | 12/9/2024 6:49:48 PM | SENT |

Copy from re:SearchTX



# Exhibit A-4

| | | |
|---|---|---|
| **SIEMENS ENERGY, INC.,** | § | **IN THE BUSINESS COURT** |
| | § | **DIVISION** |
| *Plaintiff,* | § | |
| *v.* | § | |
| | § | |
| **PDV HOLDING, INC.,** | § | |
| | § | **OF THE ELEVENTH DISTRICT** |
| *Defendant* | § | **SITTING** |
| | § | |
| **and** | § | |
| | § | |
| **PETRÓLEOS DE VENEZUELA, S.A.,** | § | |
| | § | |
| *Intervening Defendant*. | § | **IN HARRIS COUNTY, TEXAS** |
| | § | |

## PETRÓLEOS DE VENEZUELA, S.A.'S PLEA IN INTERVENTION

Intervenor Petróleos de Venezuela, S.A. ("PDVSA") files this Plea in Intervention as a party defendant pursuant to Rule 60 of the Texas Rules of Civil Procedure and Section 37.006(b) of the Texas Civil Practice and Remedies Code. This action is an enforcement proceeding based on a judgment that Siemens Energy, Inc. ("Siemens") alleges it obtained against PDVSA (the "New York Judgment") in the United States District Court for the Southern District of New York (the "New York Court").[1] Siemens seeks (1) a declaratory judgment that PDVSA and Defendant PDV Holding, Inc. ("PDVH") are alter egos; (2) a declaratory judgment that PDVH is liable on the New York Judgment because it and PDVSA are alter egos; and (3) to enforce the New York Judgment in Texas against PDVH. PDVSA is intervening to defend against Siemens' attempts to collect on a judgment Siemens alleges was entered against PDVSA and to defend against Siemens' claims that PDVSA and PDVH, PDVSA's wholly owned subsidiary, are alter egos. PDVSA also is intervening to protect its rights and interests related to post-judgment enforcement proceedings

---

[1] *Dresser-Rand Co. v. Petróleos de Venezuela, S.A. et al.*, No. 19-cv-2689-LLS (S.D.N.Y).

against an instrumentality of a foreign state under the Foreign Sovereign Immunities Act of 1976 (the "FSIA"), 28 U.S.C. §§ 1601–1610.

**PARTIES**

1.      Plaintiff Siemens Energy, Inc. is a Delaware corporation with, upon information and belief, its principal place of business in the state of Florida.

2.      Defendant PDV Holding, Inc. is a Delaware corporation with its principal place of business in Houston, Texas.  It is a wholly owned subsidiary of PDVSA.

3.      Intervenor Petróleos de Venezuela, S.A., the state-owned oil company of the Bolivarian Republic of Venezuela, is a Venezuelan corporation with its principal place of business in Caracas, Venezuela.  PDVSA is an "agency or instrumentality of a foreign state" within the definition of the FSIA. 28 U.S.C. § 1603(b).

**INTERVENOR PDVSA'S INTEREST IN LAWSUIT**

4.      A party may intervene pursuant to Rule 60 if it has a justiciable interest in the lawsuit.  A party has a justiciable interest in a lawsuit when its interests will be affected by the litigation.  *In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008).  The interest asserted by the intervenor may be legal or equitable in nature.  *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.).

5.      A party may intervene as a party defendant if the action, or any part thereof, could have been brought against the intervenor and the intervenor could defeat all or part of the recovery sought.  *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990); *Metromedia Long Distance, Inc. v. Hughes*, 810 S.W.2d 494, 497 (Tex. App.—San Antonio 1991, writ denied).  In addition, "[w]hen declaratory relief is sought, all persons who have or claim any

2

interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem. Code § 37.006(a).

6.       As the party against whom Siemens alleges it holds the New York Judgment that it seeks to enforce, PDVSA has multiple justiciable interests in this action.  First, PDVSA has a justiciable interest in opposing Plaintiffs' claim for a declaratory judgment that PDVSA and PDVH are alter egos.  PDVSA has a clear interest in protecting the integrity of the corporate veil between it and its subsidiary.  If the Court were to declare PDVSA and PDVH to be alter egos, as Siemens alleges, such a determination could potentially be asserted as binding upon PDVSA in other proceedings.  Thus, such a declaration could subject PDVSA and its assets to potential liability for the debts of PDVH or could result in imputation of PDVH's alleged conduct and contacts to PDVSA for jurisdictional or other purposes.  As such, PDVSA's interests in its corporate veil would be impaired if the Court enters the relief requested by Siemens.

7.       Second, PDVSA has an interest in defending any applicable sovereign immunity protections granted by the FSIA.  PDVSA is the state-owned oil company of the Bolivarian Republic of Venezuela and is an "agency or instrumentality of a foreign state" within the definition of the FSIA.  *See* 28 U.S.C. § 1603(b).  As such, it is entitled to the protections afforded by the FSIA related to enforcement of judgments.

8.       PDVH cannot adequately represent PDVSA's interests.  PDVSA and PDVH are separate and distinct entities.  As the parent and a foreign sovereign instrumentality, PDVSA may have defenses that differ from any defenses PDVH may have.  And as a non-instrumentality of a foreign state, PDVH cannot adequately enforce any sovereign immunity protections that may be available to PDVSA.

3

9.     This case arises from a judgment that Siemens claims against PDVSA.  As the judgment debtor, PDVSA has a practical interest in intervening in this proceeding that Siemens has brough to enforce that judgment.

## **PRAYER FOR RELIEF**

PDVSA, having intervened through this Plea, respectfully requests that the Court:

a.     Dismiss Plaintiffs' Petition and enter judgment in favor of PDVSA; and

b.     Grant PDVSA such other relief to which it may be entitled.


Dated: January 13, 2025

Respectfully submitted,

*/s/ Matthew C. Hoffman*
Matthew C. Hoffman

Camilo Cardozo (*Pro Hac Vice* Pending)
New York State Bar No. 3984010
**VINSON & ELKINS LLP**
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
(212) 237-0051
ccardozo@velaw.com

Matthew C. Hoffman
State Bar No. 24068697
Andreina Escobar
State Bar No. 24131797
**VINSON & ELKINS LLP**
845 Texas Avenue
Suite 4700
Houston, TX 77002
(713) 758-2838
mhoffman@velaw.com
aescobar@velaw.com

*Attorneys for Intevenor*
*Petróleos de Venezuela, S.A.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 13, 2025, a true and correct copy of the above and foregoing document was served on counsel of record using the Court's electronic filing system, in accordance with TEX. R. CIV. P. 21a.

*/s/ Matthew C. Hoffman*
Matthew C. Hoffman