**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

SIEMENS ENERGY, INC.,

        Plaintiff,

  v.

PDV HOLDING, INC.,

        Defendant,

  and

PETRÓLEOS DE VENEZUELA, S.A.,

        Intervenor Defendant.

[Removed from the Business Court Division of the Eleventh District Sitting in Harris County, Cause No. 24-BC11B-0010]

No. 4:25-cv-00156

**DEFENDANT PDV HOLDING, INC.'S**
**<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

Statement of Issues ................................................................................................ 1

Introduction and Summary of Argument ................................................................ 1

Background ............................................................................................................. 3

Standard of Review and Applicable Law............................................................... 5

Argument and Authorities...................................................................................... 7

      I.      Siemens Has Not Alleged "Fraud or Similar Injustice" Under Delaware Law to Justify Piercing PDVH's Corporate Veil. ........................................................... 8

      II.     Siemens Has Not Alleged "Exclusive Domination and Control" Under Delaware Law to Justify Piercing PDVH's Corporate Veil. ................................. 12

      III.    Siemens Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest Under Delaware Law...................................................... 17

Conclusion ............................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Ace Am. Ins. Co. v. Huntsman Corp.*,
   255 F.R.D. 179 (S.D. Tex. 2008) ........................................................................... 9, 12

*Administrators of Tulane Educ. Fund v. Ipsen, S.A.*,
   450 F. App'x 326 (5th Cir. 2011) ................................................................................ 14

*AHBP LLC v. Lynd Co.*,
   649 F. Supp. 3d 371 (W.D. Tex. 2023) ......................................................................... 7

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
   545 A.2d 1171 (Del. 1988) ........................................................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................... 5, 8

*Brown Lab Investments, LLC v. Moesser*,
   No. 01-21-00668-CV, 2023 WL 8631713 (Tex. App.—Houston [1st Dist.]
   Dec. 14, 2023, pet. denied) .............................................................................. 7, 13, 16

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
   154 A.2d 684 (Del. 1959) ............................................................................................... 9

*Cali-Curl, Inc. v. Marianna Indus., Inc.*,
   Civ. A. No. 3:23-CV-00320-K, 2023 WL 6452379 (N.D. Tex. Oct. 3, 2023) ........... 7

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
   No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023) .................... 8, 10

*Crosse v. BCBSD, Inc.*,
   836 A.2d 492 (Del. 2003) ........................................................................................... 8, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018), *aff'd* 932 F.3d 126 (3d Cir. 2019).................... 4

*Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*,
   879 F.3d 79 (3d Cir. 2018 ............................................................................................ 10

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
   147 F. App'x 195 (2d Cir. 2005)................................................................................... 18

*Davis v. Bayless*,
   70 F.3d 367 (5th Cir. 1995)............................................................................................ 4

*Enex Int'l, Inc. v. Prime 3 Grp., LLC*,
   No. 3:17-CV-00163, 2020 WL 6731019 (S.D. Tex. Oct. 27, 2020),
   *R&R adopted*, 2020 WL 6728851 (S.D. Tex. Nov. 16, 2020) ................................. 6

*First v. Rolling Plains Implement Co., Inc.*,
   108 F.4th 262 (5th Cir. 2024) ................................................................. 5, 6

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995) ................................................................. 14

*Gallagher v. McClure Bintliff*,
   740 S.W.2d 118 (Tex. App.—Austin 1987, writ denied) ........................... 6

*Grace Bros. v. UniHolding Corp.*,
   No. Civ.A. 17612, 2000 WL 982401 (Del. Ch. July 12, 2000) ................... 9

*In re Am. Intern. Refinery*,
   402 B.R. 728 (Bankr. W.D. La. 2008) ................................................. 6, 7

*In re Autobacs Strauss, Inc.*,
   473 B.R. 525 (Bankr. D. Del. 2012) ....................................................... 15

*In re BH S & B Holdings LLC*,
   420 B.R. 112 (Bankr. S.D.N.Y. 2009) ................................................... 15

*In re Gulf Fleet Holdings, Inc.*,
   491 B.R. 747 (Bankr. W.D. La. 2013) .................................................... 6

*In re Opus East, LLC*,
   528 B.R. 30 (Bankr. D. Del. 2015) ........................................................ 15

*In re Teleglobe Commc'ns Corp.*,
   493 F.3d 345 (3d Cir. 2007) ............................................................... 13

*In re The Heritage Org., L.L.C.*,
   413 B.R. 438 (Bankr. N.D. Tex. 2009) .................................................. 15

*In re Tropicana Ent., LLC*,
   520 B.R. 455 (Bankr. D. Del. 2014) ...................................................... 14

*Johnson v. Harris Cnty.*,
   83 F.4th 941 (5th Cir. 2023) ................................................................ 16

*Kelson v. Clark*,
   1 F.4th 411 (5th Cir. 2021 ..................................................................... 5

*Lucas v. Texas Indus., Inc.*,
   696 S.W.2d 372 (Tex. 1984) ................................................................ 18

*Maltz v. Union Carbide Chem. & Plastics Co.*,
    992 F. Supp. 286 (S.D.N.Y. 1998) ........................................................ 7

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
    251 A.3d 694 (Del. Ch. 2021) ................................................... passim

*Mason v. Network of Wilmington, Inc.*,
    No. Civ. A 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) ........................................ 12

*Matthews Const. Co. v. Rosen*,
    796 S.W.2d 692 (Tex. 1990) ........................................................ 6

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989) .................................................. 14

*Nieves v. Insight Bldg. Co., LLC*,
    No. CV 2019-0464-SG, 2020 WL 4463425 (Del. Ch. Aug. 4, 2020) ........................................ 16

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
    73 F.4th 157 (3d Cir. 2023) ........................................................ 4

*Oliver v. Kanan*,
    428 F. App'x 481 (5th Cir. 2011) .................................................. 10

*Pac. Dev., Inc. v. United States*,
    No. 77-0690, 1979 WL 1283 (D.D.C. Jan. 3, 1979) .................................. 13

*Phillips v. Carlton Energy Grp.*, LLC,
    475 S.W.3d 265 (Tex. 2015) ........................................................ 7

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
    No. 2019-0431-JTL, 2024 WL 274246 (Del. Ch. Jan. 25, 2024) ....................... 12

*Prod. Res. Group, L.L.C. v. NCT Group, Inc.*,
    863 A.2d 772 (Del. Ch. 2004) ...................................................... 13

*Reneker v. Offill*,
    No. 3:08–CV–1394–D, 2010 WL 1541350 (N.D. Tex. Apr. 19, 2010) ................... 4

*Roe v. United States*,
    839 F. App'x 836 (5th Cir. 2020) ................................................. 19

*Trenwick Am. Litig. Tr. v. Billett*,
    931 A.2d 438 (Del. 2007) .......................................................... 9

*Trenwick Am. Litig. Trust v. Ernst & Young, LLP*,
    906 A.2d 168 (Del. Ch. 2006) ................................................... 9, 16

*Trevino v. Merscorp, Inc.*,
  583 F. Supp. 2d 521 (D. Del. 2008) ..................................................................... 12

*United States v. Jon-T Chems., Inc.*,
  768 F.2d 686 (5th Cir. 1985) .............................................................................. 18

*Valley Fin., Inc. v. United States*,
  629 F.2d 162 (D.C. Cir. 1980) ............................................................................ 13

*VFS Fin., Inc. v. Falcon Fifty LLC*,
  17 F. Supp. 3d 372 (S.D.N.Y. 2014 ................................................................. 9, 12

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) ......................................................................... 7, 8, 9

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
  No. 3088-VCP, 2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ................................. 12

*Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*,
  642 F.2d 744 (5th Cir. 1981) ............................................................................... 6

**Statutes**

Tex. Bus. Orgs. Code § 1.104 .................................................................................. 7

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................... 8, 10

Fed. R. Civ. P. 69(a)(1) ......................................................................................... 6

**Other Authorities**

1 Fletcher Cyc. Corp. § 41.33 ............................................................................... 13

E.O. 13808, 82 Fed. Reg. 41155 (Aug. 24, 2017) ............................................... 2, 11

E.O. 13857 (Jan. 25, 2019) ...................................................................................11

General License 2A, *Authorizing Certain New Debt, New Equity, and Securities
  Transactions Involving PDV Holding, Inc. and CITGO Holding, Inc.*,
  Office of Foreign Assets Control (Aug. 5, 2019)...............................................11

**Statement of Issues**

(1)      Whether Plaintiff Siemens Energy, Inc. ("Siemens") has failed to state a claim that judgment debtor Petróleos de Venezuela, S.A. ("PDVSA") and Defendant PDV Holding, Inc. ("PDVH") are alter egos such that Plaintiff can enforce its judgment against PDVSA against PDVH or its assets.

**Introduction and Summary of Argument**

In 2017, Siemens's predecessor executed a promissory note with PDVSA ("2017 Note"), the Venezuelan national oil company. After PDVSA defaulted on the note, Siemens obtained a judgment and junior writ of attachment against the shares of PDVH, PDVSA's wholly owned Delaware subsidiary. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-00151 (D. Del.). In *Crystallex*, the District of Delaware has since 2021 overseen a forced sale of the PDVH shares to satisfy over $20 billion in judgments held by eighteen groups of creditors of Venezuela and/or PDVSA, including Siemens. But now, "[d]ue to the uncertainty surrounding" whether there will be enough sale proceeds to satisfy Siemens's judgment against PDVSA, ¶ 11,[1] Siemens has filed this alter ego action against PDVH directly to try to jump the line ahead of senior attachment holders. Tellingly, however, Siemens does not and cannot allege that PDVH had anything to do with the 2017 Note, that Siemens was misled into believing PDVH's assets would be available to pay PDVSA's debt to Siemens, or that PDVSA transferred assets to PDVH that should have gone to Siemens. Under such circumstances, Siemens's inequitable and insufficient attempt to pierce PDVH's corporate veil must be dismissed.

*First*, Siemens does not come close to alleging "fraud or similar injustice" in the use of corporate form, as required by Delaware law, which Siemens agrees governs its alter ego claim

---

[1] The Petition, ECF No. 1-2, is cited as "¶ __."

1

against a Delaware corporation. Siemens complains that PDVH paid excessive dividends to PDVSA in 2015 and pledged its assets to support PDVSA's obligations to other creditors in 2016, ¶¶ 14–16, but that is not a fraud in the corporate form as to *creditors of PDVSA*. And in any event, these transfers occurred *before* Siemens executed the note in 2017. If anything, PDVH's dividend payments only enhanced PDVSA's creditworthiness when Siemens chose to loan PDVSA money. Siemens also vaguely alleges that PDVH's indirect subsidiary CITGO Petroleum Corporation ("CITGO") borrowed money in 2019 that was paid up the corporate chain and used by PDVSA to satisfy the debts of PDVSA's parent, Venezuela. ¶ 17. It is unclear how Siemens thinks this could have occurred given that, in 2017, the U.S. government blocked all dividends or transfers to PDVSA or Venezuela without a specific license from the Treasury Department's Office of Foreign Assets Control. *See* E.O. 13808, 82 Fed. Reg. 41155, 41155–56 (Aug. 24, 2017). But even if this allegation were true (which it is not), Siemens is not a creditor of CITGO or PDVH, and Delaware law is clear that transfers *to* a debtor by a non-debtor are not a fraud in the corporate form. If Siemens believes PDVSA improperly used funds that should have gone to Siemens to instead pay Venezuela's creditors, its grievance is with PDVSA. Ultimately, the only purported injustice Siemens alleges is the potential that there will be insufficient value in the PDVH shares to satisfy all of PDVSA's and Venezuela's many creditors. That concern does not justify piercing the corporate veil under Delaware law.

*Second*, Siemens does not allege any non-conclusory facts plausibly suggesting that PDVSA exercised exclusive domination or control over PDVH. The bald legal conclusions asserted in the Petition do not suffice to state an alter ego claim.

*Third*, because Siemens is requesting "reverse veil piercing"—i.e., it is attempting to reach the assets of its debtor's subsidiary rather than the assets of its debtor's shareholders—it has the

burden of showing that piercing PDVH's corporate veil would be equitable in light of eight additional factors required under Delaware law. Yet Siemens does not even attempt to demonstrate that reverse-piercing would be equitable or serve the public interest. Far from it. Siemens's requested relief here would be *in*equitable and *contravene* the public interest, as evidenced by the fact that Siemens has advanced diametrically opposed positions in two separate lawsuits simultaneously seeking to recover on the same defaulted 2017 Note: in *Crystallex*, Siemens's attempt to sell PDVH's corporate stock to third-party bidders relies on the integrity of PDVH's separate legal and factual existence; here, Siemens asserts the incompatible allegation that PDVH is a sham whose separate corporate existence should be disregarded. Siemens cannot call on equity to have its cake and eat it too. In fact, its requested relief here would allow Siemens to cut the *Crystallex* line to the detriment of innocent creditors who also rely on PDVH's separate existence to collect on their debt against PDVSA or Venezuela and the bidders who would pay for the PDVH stock. This is fundamentally inequitable and not the purpose of the alter ego doctrine.

## Background

Siemens is the successor of Dresser-Rand Company ("D-R") after D-R and Siemens merged. ¶ 9 & n.2. PDVH is a Delaware corporation and wholly owned by PDVSA, which is itself wholly owned by the Republic of Venezuela. ¶¶ 5, 12. PDVH is the sole owner of CITGO Holding, Inc. ("CHI"), which is the sole owner of CITGO Petroleum Corporation, a major U.S. oil refiner in Texas. ¶ 12.

Siemens alleges "[o]n information and belief" that, in 2015, PDVH caused its subsidiary, CHI, to issue a $2.8 billion dividend, which PDVH then "siphoned" to PDVSA. ¶¶ 14–15. The following year, PDVSA issued $3 billion in new bonds to refinance its maturing debt while allegedly causing PDVH to pledge its assets—50.1% of its CHI shares—to help secure those

bonds. ¶ 16. In 2017, Siemens voluntarily executed a promissory note with PDVSA. ¶¶ 9–10.[2] Siemens does not allege that it sought a guaranty from PDVH. Nor does Siemens allege that PDVH agreed to provide any financial credit or support for the 2017 Note.

Siemens alleges that, two years after executing its note, PDVH caused CHI to issue more debt, which was paid up the corporate chain to PDVSA and then used "to pay *Venezuela's* debts," which Siemens characterizes as fraudulent conduct. ¶ 17 (emphasis in original).

In 2021, after PDVSA defaulted on the 2017 Note, Siemens obtained a judgment against PDVSA in the U.S. District Court for the Southern District of New York for an amount allegedly now worth over $200 million ("Judgment"). ¶¶ 3, 9–10; *see* Pet. Ex. 1. Plaintiff alleges that the Judgment is unsatisfied. ¶ 10. To enforce the Judgment, Siemens obtained a writ of attachment on the stock of PDVH in *Crystallex*. ¶ 11. In *Crystallex*, creditors of the Republic[3] and PDVSA have been pursuing post-judgment enforcement proceedings since 2017, seeking to execute on PDVSA's shares in PDVH. *See* ¶ 11; *see also OI European Group B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 163 (3d Cir. 2023) (explaining that *Crystallex* creditors seek to "ultimately . . . reach funds in [CHI], a Delaware corporation indirectly owned by PDVH"). The *Crystallex* court has appointed a special master to oversee a public auction of the shares. ¶ 11 n.4. Eighteen creditors with over $21 billion in total judgments are participating in the Delaware

---

[2] The Court may take judicial "notice of the judicial record in prior related proceedings." *Reneker v. Offill*, No. 3:08–CV–1394–D, 2010 WL 1541350, at *5 (N.D. Tex. Apr. 19, 2010) (citing *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995)); *see also* ¶ 11 (identifying *Crystallex* as related case); *accord Crystallex*, Dkt. 1113-2 at 1–2 (D. Del. Apr. 9, 2024) (identifying January 20, 2017 as the date of the note between D-R and PDVSA alleged in ¶ 9).

[3] Creditors of the Republic have been permitted to attach PDVSA's assets based on a limited finding of alter ego between Venezuela and PDVSA. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd* 932 F.3d 126 (3d Cir. 2019). The *Crystallex* court has "never made any finding regarding the alter ego status of PDVH or any subsidiary of PDVSA." *Crystallex*, Dkt. 1515 at 12 n.7 (D. Del. Dec. 30, 2024).

proceedings.[4] In April 2024, the Delaware court issued a final priority order, placing Siemens in eleventh place behind roughly $6.8 billion in judgments.[5]

Notwithstanding that Siemens is a creditor within the priority order and thus stands to collect on the Judgment in *Crystallex*, Siemens filed this copycat alter ego lawsuit in October 2024 due to potential "uncertainty" over its prospect of collecting money in the *Crystallex* proceeding. ¶ 11. This lawsuit follows "the filing by certain creditors of veil piercing actions against PDVH," in which the plaintiffs seek to enforce their judgments against PDVH under state law by obtaining a declaration that PDVH is the alter ego of PDVSA. ¶¶ 11, 20–28; *see also id*. n.4 (collecting cases). In support of its extraordinary request to pierce the veil of a longstanding American corporate citizen, Siemens sets forth just four paragraphs containing three sets of conclusory factual allegations. ¶¶ 14–17.

### Standard of Review and Applicable Law

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor, *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021), but need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

"Federal Rule of Civil Procedure 9 requires fraud allegations to be pleaded with specificity." *First v. Rolling Plains Implement Co., Inc.*, 108 F.4th 262, 271 (5th Cir. 2024). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Id.* (citations

---

[4] *Crystallex*, Dkt. 1102 at 3–5 (D. Del. Apr. 3, 2024).
[5] *Crystallex,* Dkt. 1102 at 3–4 (D. Del. Apr. 3, 2024).

omitted). The Fifth Circuit "interprets Rule 9(b) 'strictly,'" and "appl[ies] the rule with force, without apology." *Id.* (citations omitted).

"The parties agree that Delaware's substantive law governs this case." *Siemens v. PDVH, Scheduling Conference Report, Discovery Control Plan, and Scheduling Order*, Cause No. 24-BC11B-0010 ¶ 1 (Tex. Bus. Ct. Dec. 2, 2024). This agreement is consistent with the principle that a federal court faced with an alter ego claim typically applies the choice-of-law rules of the forum state. *See In re Am. Intern. Refinery*, 402 B.R. 728, 743 (Bankr. W.D. La. 2008) (noting that "alter ego doctrine is a state law remedy" and thus looking to "choice-of-law rules of the forum state") (citing *Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981)); *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 788 (Bankr. W.D. La. 2013) ("Applying Louisiana's choice-of-law rule for veil-piercing claims"). That application of Texas choice-of-law rules is doubly appropriate here because Siemens's request to pierce PDVH's corporate veil is supplemental to its effort to enforce a judgment against PDVSA, ¶ 28,[6] and Federal Rule of Civil Procedure 69(a) requires application of the forum-state's law, including its choice-of-law rules, in enforcement proceedings and supplemental proceedings in support thereof. *See* Fed. R. Civ. P. 69(a)(1); *see also Enex Int'l, Inc. v. Prime 3 Grp., LLC*, No. 3:17-CV-00163, 2020 WL 6731019, at *2 (S.D. Tex. Oct. 27, 2020), *R&R adopted*, 2020 WL 6728851 (S.D. Tex. Nov. 16, 2020) (applying forum state's choice-of-law rules to determine which substantive law applied to turnover proceedings).

---

[6] In Texas, piercing the corporate veil is not a standalone cause of action; it is solely a remedy available to support another cause of action. *Gallagher v. McClure Bintliff*, 740 S.W.2d 118, 119 (Tex. App.—Austin 1987, writ denied) ("An attempt to pierce the corporate veil, in and of itself, is not a cause of action but rather is a means of imposing liability on an underlying cause of action such as a tort of breach of contract."); *accord Matthews Const. Co. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990).

Under Texas's choice-of-law rules, Siemens's request to pierce PDVH's corporate veil is governed by the law of PDVH's state of incorporation. *See Phillips v. Carlton Energy Grp.*, LLC, 475 S.W.3d 265, 283 (Tex. 2015) (applying the law of the state of incorporation to alter ego determination) (citing Tex. Bus. Orgs. Code § 1.104); *see also AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 385 (W.D. Tex. 2023) ("Under Texas's choice-of-law rules, whether a corporation . . . may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized.") (internal quotation marks omitted); *Cali-Curl, Inc. v. Marianna Indus., Inc.*, Civ. A. No. 3:23-CV-00320-K, 2023 WL 6452379, at *5 (N.D. Tex. Oct. 3, 2023) (same). This "choice-of-law rule is consistent with the Restatement as well as the choice-of-law rules of other jurisdictions." *Am. Intern. Refinery*, 402 B.R. at 743 (citing Restatement (Second) of Conflict of Laws § 307 (1971); *Maltz v. Union Carbide Chem. & Plastics Co.*, 992 F. Supp. 286, 300 (S.D.N.Y. 1998) (applying law of the state of incorporation)).

Because PDVH is incorporated in Delaware, ¶ 5, Delaware law controls. *See, e.g., Brown Lab Investments, LLC v. Moesser*, No. 01-21-00668-CV, 2023 WL 8631713, at *9 n.15 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, pet. denied) ("Because [PDVH] is a Delaware [corporation], Delaware law governs the alter ego determination.").

### Argument and Authorities

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). It requires a court to make two findings: (1) "the corporate structure cause[d] fraud or similar injustice" and (2) "exclusive domination and control" by one corporate entity over the other. *Id*. at 1184. The typical veil-piercing case involves a creditor seeking to reach the assets of a debtor's shareholder. Here, however, Siemens seeks the opposite: a "reverse veil-pierce" where a creditor

of the shareholder tries to disregard the corporation's separate existence to attach the corporation's assets. In addition to the two requirements above, the reverse-pierce plaintiff must prove a third: that taking the extraordinary step of holding a corporation responsible for the debts of its shareholder/parent would be equitable in light of the interests of the corporation's creditors, innocent third parties, and other important public policies. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021). Siemens does not come close to alleging facts plausibly supporting any of the elements of its reverse-veil-piercing claim.

## I.    Siemens Has Not Alleged "Fraud or Similar Injustice" Under Delaware Law to Justify Piercing PDVH's Corporate Veil.

The alter ego claim fails as a threshold matter because Siemens has not alleged facts plausibly showing "fraud or similar injustice" through misuse of the corporate form to support the relief sought here. The factual allegations that Siemens points to are inadequate to satisfy Rule 9(b)'s particularity requirement. And even aside from Rule 9(b), the alleged facts do not plausibly show fraud or similar injustice as a matter of Delaware law. *See Iqbal*, 556 U.S. at 678.

The Delaware Supreme Court has held that, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created *a sham entity designed to defraud investors and creditors*." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (emphasis added); *accord Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *6 (Del. Ch. Sept. 5, 2023) ("The fraud or injustice must, however, 'come from an inequitable use of the corporate form itself as a sham[.]'") (collecting cases). Attempts to enforce a judgment through reverse-piercing are no exception. As the Delaware Supreme Court has held, "[a] creditor of the parent corporation may not, *in the absence of fraud*, disregard the separate existence of a subsidiary

corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959) (emphasis added). The requirement to establish that "the corporate structure cause[s] fraud or similar injustice" is a high bar. *Wallace*, 752 A.2d at 1184.

The Petition does not meet this high bar. Siemens does not (and cannot) allege that PDVSA "created [PDVH as] a sham entity," *Crosse*, 836 A.2d at 497, or that PDVH, the longstanding parent of a major oil refiner and other companies, exists solely "as a vehicle for fraud," *Wallace*, 752 A.2d at 1184. This failure alone is sufficient to dispose of the alter ego claim. *See, e.g.*, *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 198, 208 (S.D. Tex. 2008) (failure to allege "fraud or similar injustice" is basis to dismiss alter ego action under Delaware law); *accord VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 384 (S.D.N.Y. 2014).

Siemens complains that PDVH paid excessive dividends to PDVSA in 2015 and pledged its assets to support PDVSA's obligations to other creditors in 2016. ¶¶ 14–16. But "a subsidiary board is permitted to act to benefit its parent, not simply the subsidiary itself, for the obvious reason that wholly owned subsidiaries are formed by parents to benefit the parents, and not for their own sake." *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 201–02 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007); *see also Grace Bros. v. UniHolding Corp.*, No. Civ.A. 17612, 2000 WL 982401, at *12 (Del. Ch. July 12, 2000) ("It is by no means a novel concept of corporate law that a wholly owned subsidiary functions to benefit its parent."). There is thus nothing inherently suspect or improper about PDVH's actions in support of PDVSA. In all events, these transfers occurred before Siemens agreed to loan money to PDVSA in 2017 and thus could not constitute a fraud or similar injustice as to Siemens. If anything, these sizeable transfers to PDVSA *enhanced* PDVSA's creditworthiness.

Siemens vaguely alleges that the payment of dividends in 2015 was issued "in a manner intended to make such funds unavailable to creditors in the United States." ¶ 14. But such "vague and conclusory" statements are insufficient to state a claim, *Oliver v. Kanan*, 428 F. App'x 481, 482 (5th Cir. 2011), especially when the plaintiff must allege fraud in the use of the corporate form, *see* Fed. R. Civ. P. 9(b) (plaintiff alleging fraud "must state with particularity the circumstances constituting fraud"). Moreover, Siemens itself alleges that PDVSA needed the dividends to address "looming debt maturity," ¶ 16, which suggests that PDVSA intended to use the funds to pay its creditors, not to defraud them.

Indeed, the Third Circuit has already held that the *exact same dividends and pledges* that Siemens complains about here do *not* constitute a fraudulent transfer under Delaware law, because transfers by a non-debtor (here, PDVH) to a debtor (here, PDVSA) cannot be fraudulent as to the debtor's creditors (here, Siemens). *Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018).[7] And even if PDVH's alleged transfers to PDVSA were fraudulent transfers (which they were not), that would be insufficient to state an alter ego claim because "fraud or injustice must . . . come from an *inequitable use of the corporate form itself* as a sham, and not from the underlying claim." *Cleveland-Cliffs*, 2023 WL 5688392, at *6 (emphasis added) (declining to pierce the corporate veil where plaintiff alleged that an asset sale "was a fraudulent transfer" but did not allege any separate fraud in the use of the corporate form).

The Petition also alleges that CITGO sent $1.3 billion up the corporate chain in 2019 to pay Venezuela's creditors. ¶ 17. That cursory allegation fails to plausibly establish fraud for the

---

[7] The Third Circuit left open the possibility that a transfer by a non-debtor could be considered fraudulent if the non-debtor were the alter ego of the debtor. *Crystallex*, 879 F.3d at 86. But if PDVH's dividends themselves could have established alter ego, the Third Circuit would not have ordered dismissal of the fraudulent transfer claim.

same reasons set forth above: PDVH's payments to PDVSA, assuming they occurred, did not diminish PDVSA's ability to pay its creditors and thus could not have worked a fraud on Siemens. However, this allegation suffers from an even more fundamental defect, which is that Plaintiff fails to allege how such a transfer could possibly have occurred given the President's 2017 Executive Order explicitly prohibiting "dividend payments or other distributions of profits to the Government of Venezuela from any entity owned or controlled, directly or indirectly, by the Government of Venezuela" without a specific license from the Office of Foreign Asset Control ("OFAC"). E.O. 13808 § 1(a)(iv), 82 Fed. Reg. at 41155 (Aug. 24, 2017), as amended by E.O. 13857 (Jan. 25, 2019); *see also id.* § 3(d), 43 Fed. Reg. at 41156 (defining "Government of Venezuela" to include "PDVSA"). The Petition does not allege that OFAC issued a license authorizing PDVH to transfer funds to PDVSA. Nor could it.[8] Neither does the Petition allege how such a transfer could have been accomplished consistent with the court's 2018 order in *Crystallex* attaching the shares of PDVH, as that attachment prohibits PDVH from paying any dividends to PDVSA until the attachment is released (which it has not been).[9] Siemens does not attempt to explain how PDVH could have provided a $1.3 billion dividend or other distribution to PDVSA in 2019 without a license from OFAC and consistent with the attachment in *Crystallex*.

Ultimately, the only purported fraud or similar injustice Siemens alleges is the potential that there will be insufficient value in the PDVH shares to satisfy all of PDVSA's and Venezuela's many creditors in the *Crystallex* proceedings. But "the possibility that a plaintiff may have

---

[8] OFAC issued a license authorizing certain otherwise prohibited transactions "where the only Government of Venezuela entities involved are PDV Holding, Inc. (PDVH), CITGO Holding, Inc., or any of their subsidiaries." General License 2A, *Authorizing Certain New Debt, New Equity, and Securities Transactions Involving PDV Holding, Inc. and CITGO Holding, Inc.*, Office of Foreign Assets Control (Aug. 5, 2019), https://ofac.treasury.gov/media/34121/download?inline. But that license did not authorize transactions between PDVH *and PDVSA*.

[9] *See Crystallex*, Dkt. 1277 at 2–3 (D. Del. Sept. 17, 2024); *see also supra* n.3.

difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (citing *Mason v. Network of Wilmington, Inc.*, No. Civ. A 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005)).

Having failed to meet the "fraud or similar injustice" prong of the alter ego test, nothing further is needed to hold that the alter ego claim fails as a matter of bedrock Delaware law. *See, e.g.*, *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 198, 208 (S.D. Tex. 2008) (failure to allege "fraud or similar injustice" is basis to dismiss Delaware alter ego allegation); *accord VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 384 (S.D.N.Y. 2014).

## II.    Siemens Has Not Alleged "Exclusive Domination and Control" Under Delaware Law to Justify Piercing PDVH's Corporate Veil.

Even if Siemens had sufficiently alleged fraud or injustice, its allegations of "extensive control" by PDVSA over PDVH are insufficient. Delaware law presumes that a wholly owned subsidiary is not the alter ego of its parent company. *Principal Growth Strategies, LLC v. AGH Parent LLC*, No. 2019-0431-JTL, 2024 WL 274246, at *16 (Del. Ch. Jan. 25, 2024) ("[T]here exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors."). Instead, Delaware courts consider the following non-dispositive factors when assessing "extensive control": "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; or (5) whether, in general, the company simply functioned as a facade for the controlling shareholder." *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. 3088-VCP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008); *see also Manichaean*, 251 A.3d at 706–07 (considering same factors in reverse veil-piercing context). As Texas courts have recognized when assessing these factors, "corporate veil-piercing [is only] necessary and appropriate" in "exceptional cases."

*Brown Lab*, 2023 WL 8631713, at \*9–\*11 (reversing veil-piercing decision).

*Undercapitalization*—Plaintiff fails to allege that PDVH "was [not] adequately capitalized for the undertaking" of being a holding company for a refiner and marketer of petroleum products, either upon formation or any other time. *Manichaean Cap.*, 251 A.3d at 706; 1 Fletcher Cyc. Corp. § 41.33 ("Adequacy of capitalization must be measured at the time of incorporation because it reveals whether the corporation was created to avoid liability."). The allegation that PDVH was "undercapitalized" because it paid dividends to PDVSA, *see* ¶¶ 15, 22, is not only vague and conclusory, but it also fails to establish that PDVH was undercapitalized for its own undertakings. *See* 1 Fletcher Cyc. Corp. § 41.33 ("'Inadequate capitalization' . . . generally means capitalization very small in relation to the nature of the business of the corporation and the risks attendant to such businesses.").[10]

*Solvency*—"Under Delaware law, a corporation is insolvent if it has: '1) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof, or 2) an inability to meet maturing obligations as they fall due in the ordinary course of business.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 384 (3d Cir. 2007) (quoting *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004)). Although Siemens alleges that "PDVSA [] intentionally left PDVH insolvent," ¶ 22, there is not a single non-conclusory factual allegation to support that conclusion. Nor could there be, given that PDVH

---

[10] Moreover, in a reverse-piercing case the "undercapitalization of the [subsidiary] corporation may not square with the contours of the alleged fraud." *Pac. Dev., Inc. v. United States*, No. 77-0690, 1979 WL 1283, at \*2 (D.D.C. Jan. 3, 1979), *aff'd sub nom. Valley Fin., Inc. v. United States*, 629 F.2d 162 (D.C. Cir. 1980). On the contrary, "where a shareholder is attempting to escape his or her debts, *over* capitalization of a wholly owned corporation may be an indicator of fraud and serve as a ground for penetrating the corporation's shell to reach its assets for the shareholder's debts." *Id.* Siemens does not allege that PDVSA has attempted to render itself judgment proof by overcapitalizing PDVH.

continues as a going concern more than nine years after the alleged transactions in 2015 and 2016 and is currently the subject of a multi-billion-dollar bid in a judicial sale in *Crystallex* to satisfy debts owed to other PDVSA creditors. *See* ¶ 11; *In re Tropicana Ent., LLC*, 520 B.R. 455, 472 (Bankr. D. Del. 2014) (mere recitation of "conclusory statements" insufficient to plead insolvency under Delaware law). Indeed, the whole premise of Siemens's effort to attach PDVH's shares in *Crystallex* and execute its judgment against PDVH here is that PDVH *is* solvent.

*Corporate Formalities*—To pierce the corporate veil, courts applying Delaware law consider whether the corporation "failed to observe certain corporate formalities." *Manichaean*, 251 A.3d at 708. Formalities include whether the entities kept distinct addresses, records, accounts, personnel, and operations. *See id*. at 708; *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989) (observing formalities such as distinct "assets" and "operations"). Siemens asserts one sentence about formalities: "PDVSA [] ignored corporate distinctions and formalities between PDVSA and PDVH, including by exercising complete control over PDVH and directing PDVH's daily affairs for the sole benefit of PDVSA." ¶ 22. This bare legal conclusion, bereft of supporting facts plausibly suggesting that PDVH and PDVSA failed to observe corporate formalities, is woefully insufficient. If Siemens means to allege that PDVH declined to observe formalities because PDVSA was involved in transactions related to dividends and bonds, *see* ¶¶ 14–17, such an allegation fails to state a claim, *see, e.g.*, *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331–33 (5th Cir. 2011) (per curiam) (declining to find alter ego because the parent did not control its wholly owned subsidiary even though the parent oversaw operations, research, and budget); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459–60 (2d Cir. 1995) ("[T]he district court correctly concluded that it could find no domination based on" the fact that the parent's approval was required for the subsidiary's transactions since "this type of conduct is

typical of a majority shareholder or parent corporation.") (collecting cases); *In re BH S & B Holdings LLC*, 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009) ("Courts refuse to pierce the veil just because parent corporations retain decision-making authority over subsidiaries.") (collecting cases).

*"Siphoning" of Funds*—Plaintiff characterizes PDVH's dividends as "siphoning funds." ¶¶ 12, 14–15, 17–18. That is nonsense. "Siphoning suggests 'the improper taking of funds that the owner was not legally entitled to receive.'" *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 557 (Bankr. D. Del. 2012) (quoting *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 517 n.69 (Bankr. N.D. Tex. 2009)). The term does not apply to the issuance of properly declared dividends, to which a shareholder is legally entitled. *See The Heritage Org.*, 413 B.R. at 517 n.69 (explaining that "siphoning funds is different than making distributions to members that are permitted by law"). "In fact, it is usually the failure to pay dividends (while instead siphoning funds from the subsidiary though other means) that" justifies piercing the corporate veil. *In re Opus East, LLC*, 528 B.R. 30, 63–64 (Bankr. D. Del. 2015) (holding that dividends are not siphoning and do "not favor piercing the corporate veil" under Delaware law). It also makes little sense for Siemens to characterize dividends as "siphoning" when those dividends provided funds *to PDVSA*. Whatever PDVSA may have done with the funds, PDVH's dividends to PDVSA could not have harmed Siemens or PDVSA's other debtors.

Siemens suggests that it was somehow improper for PDVH to issue these dividends when its parent was in extreme financial distress. *See* ¶ 17 (alleging that "PDVSA came back for more" when "conditions in Venezuela deteriorat[ed]"). But directors of a wholly owned subsidiary (like PDVH) are obligated by their fiduciary duties to operate the company for the benefit of its shareholder (like PDVSA) and indeed are authorized by law to follow a sole shareholder's

instructions. *See Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988); *Trenwick*, 906 A.2d at 201–03 (explaining that directors of a subsidiary have no "duty to second-guess the business judgment of its parent corporation when following and supporting the parent's strategy would not violate any legal obligation the subsidiary owes to another"). The Petition does not allege that PDVH owed Siemens an independent duty that was somehow violated by its dividend payments to PDVSA.

*General Façade*— Siemens implies that PDVSA and PDVH are not "separate entities" due to board overlap. ¶ 18. But it is well-settled Delaware law that the overlap of personnel and directors between members of a corporate family does not suffice to pierce the corporate veil. *Nieves v. Insight Bldg. Co., LLC*, No. CV 2019-0464-SG, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) (explaining that Delaware law presumes a subsidiary is distinct from its parent and that "[s]imilarities between entities, such as overlap of personnel, do not negate this basic principle: This rule applies even where one corporation wholly owns another and even though the entities have identical officers and directors." (internal quotation marks omitted)).

Siemens's other allegations of control are, yet again, bare legal conclusions. *See* ¶ 12 ("PDVSA . . . has exerted complete control and dominance over PDVH, and has used PDVH not as a separate entity, but as a tool and means to siphon funds to avoid paying its debts."); ¶ 22 ("PDVSA . . . exercise[es] complete control over PDVH and directing PDVH's daily affairs for the sole benefit of PDVSA."). These "threadbare recitals of the elements" of a veil-piercing claim "supported by mere conclusory statements" are insufficient to state a claim. *Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023) (citation omitted).

Under Delaware law, piercing the veil is "extremely rare" because "Delaware embraces and will protect 'corporate separateness.'" *Manichaean*, 251 A.3d at 713–14 & n.117; *Brown Lab*,

2023 WL 8631713, at *9–*11 ("exceptional cases"). Siemens has not come close to plausibly alleging that PDVH and PDVSA are alter egos.

### III.    Siemens Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest Under Delaware Law.

In a reverse-piercing case, a plaintiff must also demonstrate that disregarding corporate separateness would be equitable in light of the interests of creditors, third parties, and public policy. Eight factors inform this inquiry. These are:

> (1) the potential impairment of "the legitimate expectations of any adversely affected [non-responsible] shareholders" and the potential for "a precedent troubling to shareholders generally";
>
> (2) the degree of the subsidiary's exercise of "dominion and control" over the parent;
>
> (3) the degree to which the injury "is related to [that] dominion and control" or the plaintiff's "reasonable reliance upon a lack of separate entity status";
>
> (4) the degree to which reverse piercing would serve "the public convenience, as articulated by the Delaware General Corporation Law and Delaware's common law";
>
> (5) "the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider";
>
> (6) "the possibility that the [plaintiff] is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief";
>
> (7) the potential harm to the subsidiary's "innocent third-party creditors"; and
>
> (8) "the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt."

*Manichaean,* 251 A.3d at 715 (cleaned up).

Siemens does not even try to allege facts supporting these factors. Nor could it plausibly allege that reverse-piercing here would be equitable. Siemens already has a writ of attachment on the PDVH stock in *Crystallex* where it is relying upon corporate separateness to collect on its Judgment. Siemens is attempting to cut the *Crystallex* line with this action to the detriment of

innocent third-party creditors.[11] Siemens's own inequitable conduct is reason enough to deny the Petition. The *Manichaean* factors also support dismissal.

*First*, Siemens cannot establish "reasonable reliance upon a lack of separate entity status between" PDVSA and PDVH when it executed its note (Factor 3). "[V]eil piercing in the contract context is infrequent [] because the party seeking relief 'is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form.'" *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 198 (2d Cir. 2005). Courts thus require a party seeking to pierce the corporate veil in a contract case to demonstrate that it was duped about the separate corporate existence of its counterparty's affiliates *at the time of contracting*; otherwise, there is no equitable basis to pursue a corporate affiliate from which it could have negotiated a guaranty (or sought other protection) at the time of contracting. *See, e.g.*, *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 693 (5th Cir. 1985) ("If the creditor wants to be able to hold the parent liable for the subsidiary's debts, it can contract for this."); *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984) ("Courts have generally been less reluctant to disregard the corporate entity in tort cases than in breach of contract cases.").

Here, the relevant contract is the 2017 Note Agreement that Siemens's predecessor (D-R) entered with full knowledge of the entity responsible for payment: PDVSA. ¶¶ 9–10. The Note Agreement does not identify PDVH as a guarantor or provider of some other form of security for the note. On the contrary, it identifies a *different* subsidiary—PDVSA Petróleo, S.A.—as "the

---

[11] The Special Master filed a motion in *Crystallex* to enjoin this and other pending alter ego actions against PDVH, arguing that these actions "threaten to destroy this Court's Sale Process" by diminishing the value of the PDVH shares. *Crystallex*, Dkt. 1515 at 4–5 (D. Del. Dec. 30, 2024). Although the *Crystallex* court denied the motion, it agreed that these actions, if successful, would diminish the value of PDVH shares. *Crystallex*, Dkt. 1515 at 18 (D. Del. Dec. 30, 2024).

Guarantor." *See Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, No. 1:22-mc-00347-LPS, ECF Nos. 4 at ¶ 8, 5-3 at 1 (D. Del.), attached as Exhibits 1 and 2.[12] Nor was there confusion about PDVH's separate corporate existence, as the 2017 Note Agreement includes a chart that clearly sets forth PDVSA's corporate relationships, including its relationship to PDVH. *See* Ex. 2 at Schedule 3.01(h) (listing PDVH as a separate corporation and PDVSA "asset"). D-R expressly warranted that it was "afforded the opportunity to ask questions" about PDVSA's "financial condition and future prospects" and "made its own appraisal" of PDVSA's "business, operations, property" and "creditworthiness." Ex. 1 § 3.02(g). PDVH was not made a part of the contract and D-R knowingly agreed to this. By effectively trying to add PDVH as a guarantor, Siemens now seeks to rewrite the contract and obtain greater security than its predecessor bargained for.

    *Second*, Siemens does not allege that PDVH controlled PDVSA (Factor 2) or that PDVH itself engaged in "wrongful conduct" (Factor 5). Siemens thus does not (and cannot) allege that PDVH's supposed control and wrongful conduct caused Siemens's injury (Factor 3).

    *Third*, Siemens is itself guilty of wrongful conduct that threatens the legitimate reliance interests of the potential buyer of the PDVH shares and third-party creditors in *Crystallex* (Factors 1, 6, 7). *Manichaean*, 251 A.3d at 716 (assessing potential harm to "innocent shareholders or creditors" of the subsidiary). For years, Siemens has sought to benefit from the marketing of the PDVH shares to innocent third-party bidders, in the hope that one will pay billions of dollars to Siemens and PDVSA's other creditors. This bidding process is premised on the reality that PDVH

---

[12] This Court may consider the contents of the 2017 Note Agreement because it is "incorporated by reference" into Siemens's Petition. *Roe v. United States*, 839 F. App'x 836, 844 (5th Cir. 2020). The note is also judicially noticeable because Siemens attached the 2017 Note Agreement as an exhibit to its underlying enforcement proceeding in Delaware and thus the contents of the note "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—i.e., from Siemens's own court filings. Fed. R. Evid. 201(b)(2); *see also Roe*, 839 F. App'x at 844.

is a separate corporation with substantial value. Yet here Siemens attempts to diminish the value of those shares by executing against PDVH for PDVSA's unsatisfied debts. It would be inequitable to permit Siemens to reverse-pierce here to the detriment of those senior creditors who have relied on PDVH's corporate separateness for years as they and Siemens have obtained attachments, litigated priority to proceeds, and spent tens of millions of dollars on the execution sale.

*Fourth*, reverse piercing here would "establish a precedent troubling to shareholders generally [Factor 1]." *Manichaean,* 251 A.3d at 715. Siemens seeks to pierce PDVH's veil based on conduct that under Delaware jurisprudence does *not* warrant disregard of the corporate form. A decision in Siemens's favor would thus put a federal court in Texas in the position of contravening Delaware public policy and diluting Delaware law's stringent protection of corporate separateness (*see* Factor 4).

*Finally*, Siemens does have another remedy available (Factor 8): pursuing its claims in the *Crystallex* process—as it is already doing. *See* ¶ 11. Siemens is only filing this lawsuit due to potential "uncertainty surrounding" its ability to collect on the Judgment in *Crystallex*. ¶ 11. In other words, Siemens already has a writ of attachment on the stock of PDVH in *Crystallex*, and it is concerned that there will not be enough proceeds to satisfy its judgment after more senior attachment holders are paid. It is therefore bringing this lawsuit to cut the *Crystallex* line to collect ahead of more senior creditors. Yet where "traditional judgment collection measures" provide a practically available remedy, "reverse piercing . . . would be unnecessarily extreme and inappropriate." *Manichaean*, 251 A.3d at 718.

## Conclusion

PDVH respectfully requests that the Petition be dismissed with prejudice.

Dated: February 21, 2025

Respectfully submitted,

**Eimer Stahl LLP**

By: */s/ Nathan P. Eimer*

Nathan P. Eimer
State Bar No. 24001478
S.D. Tex. No. 31213
neimer@eimerstahl.com
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

*Attorney for Defendant*
*PDV Holding, Inc.*

**Of Counsel:**
Scott C. Solberg (*pro hac vice*)
ssolberg@eimerstahl.com
Daniel D. Birk (*pro hac vice*)
dbirk@eimerstahl.com
James W. Joseph (*pro hac vice*)
jjoseph@eimerstahl.com
Gregory M. Schweizer (*pro hac vice*)
gschweizer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

David J. Beck
State Bar. No. 00000070
dbeck@beckredden.com
Kaitie Sorenson
State Bar No. 24128633
ksorenson@beckredden.com
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Fax: (713) 951-3720

## CERTIFICATE OF CONFERENCE

I certify that on January 24, 2025, I conferred via Zoom with counsel for Plaintiff who indicated that Plaintiff opposes this motion. Intervenor Defendant, PDVSA, consents to this motion.

*/s/ Scott C. Solberg*
Scott C. Solberg

## CERTIFICATE OF SERVICE

I certify that on February 21, 2025, a true and correct copy of **PDV Holding, Inc.'s Motion to Dismiss for Failure to State a Claim** was filed via the court's CM/ECF system, which will automatically serve a Notice of Electronic Filing to all registered users.

*/s/ Nathan P. Eimer*
Nathan P. Eimer